JOHN SMITH, of Wakefield, *vs.* ANDREW N. STEPHAN, and others.

*Legislative powers — Municipal Corporations — Municipal Elections— Qualification of Voters—Article 1, section 5, of the Constitution—Equity Pleadings—Preamble of a Statute—Effect of its Recital as Evidence.*

The Legislature may authorize a municipal corporation to fund its floating debt by issuing bonds therefor; and if such debt was contracted without due authority, such legislative approval will give it validity.

No municipal elections except those held in the City of Baltimore, are within the terms or meaning of section five of Article I, of the Constitution, providing for a uniform registration of the names of voters.

Under section 97 of the Public Local Law of Carroll County, giving the right to vote at municipal elections in the City of Westminster to the inhabitants who are qualified to vote for delegates to the General Assembly, the right of an inhabitant of Westminster to vote for Mayor and Councilmen must depend on the requirements of the Constitution relating to the qualification of voters, without reference to the registration list.

A bill in equity was filed by an individual complainant, against S. and others, alleging that S. unlawfully assumed to be Mayor, and the other defendants unlawfully assumed to be members of the Common Council of the City of Westminster, and that they in conjunction were unlawfully exercising the powers conferred by the charter of the city on the corporation, and were about to issue certain bonds to fund a pretended debt which did not exist, and the bill prayed an injunction to restrain the defendants and each of them from selling and disposing of the bonds.   HELD:

1st. That the averments of the bill did not show that the defendants were unlawfully exercising the powers of Mayor and Councilmen; and consequently the proceeding could not be maintained against them.

2nd. That they were impleaded in their individual capacities for acts done in the ordinary exercise of their corporate powers, and could not be held to responsibility in such a suit.

3rd. That it belonged to the municipal corporation itself to defend the legality of these acts.

4th. That on a bill in equity filed against it, if the averment that the City of Westminster was not in debt could be established, it would follow that the issue of the bonds must be enjoined.

The preamble to a statute authorizing the City of Westminster to fund the floating debt of the corporation and to issue bonds, not exceeding a specified sum, for its payment, is not evidence of the indebtedness in a Court of justice.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J., for the appellant, and submitted on brief for the appellees.

*Wm. P. Maulsby,* for the appellant.

*Charles T. Reifsnider,* and *Charles B. Roberts, Attorney-General,* for the appellees.

The bill refers to Art. 1, sec. 5, of the State Constitution to sustain the contention that the municipal election held in Westminster on the 4th of May, 1885, was void, because of the failure of the judges of election to use the registration list, and claims that the laws regulating the registration of voters in this State are applicable to all municipal elections. An examination of the section of the Constitution referred to, will fail to sustain any such construction.

The 5th sec. reads: "The General Assembly shall provide by law for a uniform registration of the names of all

voters in this State who possess the qualifications prescribed in this Article, which registration shall be conclusive evidence to the judges of election of the right of every person thus registered to vote at any election thereafter held in this State ; but no person shall vote at any election, Federal or State, hereafter to be held in this State, or at any municipal election in the City of Baltimore, unless his name appears in the list of registered voters," &c.    If the Constitution meant to include all municipal elections to be held in the State, why did it mention "municipal elections in the City of Baltimore ? " *Expressio unius est exclusio alterius.*

A very cursory examination of the registration law in force on the 4th of May, 1885, will demonstrate the difficulty of making it applicable to the election held in Westminster on that day.

The 103rd section, of Art. 7, of the Code of Public Local Laws says : " That the Common Council shall be judges of the qualifications of the Mayor, and of their own members."    It is conceded that the defendants were, at the time of the institution of the proceedings in this cause, acting as and in the discharge of the duties of the offices of Mayor and Common Council of Westminster. This being so, their acts "in regard to public matters affecting the public interests," are as valid and binding as if performed by officers unquestionably *de jure.    Koontz vs. Burgess and Commissioners of Hancock,* 64 *Md.,* 136 ; *Cooley on Taxation,* 189.

The real cause of this controversy is not to be found in the supposed infirmity of an invalid election on the 4th of May, 1885, but because the Mayor and Common Council of Westminster, in accordance with the provisions of the Act of the General Assembly of 1886, ch. 176, was about to issue and sell certain of its bonds, for the purpose of paying its indebtedness.

It is charged in the thirteenth paragraph of said bill, " that under the charter of said city, hereinbefore men-

tioned, the corporate authorities had no power or lawful right whatsoever to incur or contract any debt on account of or in behalf of said city, or to bind said city therefor, and no power or authority in that respect, other than to levy, collect and expend a tax on the property assessed in said city, not exceeding ten cents in every hundred dollars of the assessed value thereof." This paragraph of the bill raises the much discussed question of municipal authority to contract debts, and *ex-consequentia*, the right to issue evidences of such indebtedness.

The charter of Westminster expressly says in the 107th section: "The Mayor and Common Council may pass ordinances to preserve the health of the city ; to prevent and remove nuisances; to regulate negroes; to suppress gambling; to license public amusements not taxed by the State; to open and keep open streets, lanes and alleys, with the consent of the owners of the land through which the same may pass, or upon paying damages therefor, to be assessed by three disinterested persons, to be by them appointed."

And in the 108th section : " They may grade and pave streets, and lay flagstones across the same, and require the owners of lots, in front of which such grading or paving is to be done, to do the same at their own expense." And in the 119th section : "They may pass all ordinances necessary for the good government and general police of the city, and enforce the observance of such ordinances by fines and penalties, not exceeding twenty dollars for any one offence." Being thus authorized to do the things named, public necessity has required that they be done, and in the doing of them, the expense incurred has been greater than the yield from an annual tax of ten cents in every hundred dollars of the assessed value of the property in Westminster.

The 110th section of the charter reads: " The Mayor and Common Council may, whenever they think the public interest requires it, cause an assessment to be made of

Smith *vs.* Stephan, *et al.*

all the property in said city, which is subject to assessment for county or State taxes; and they may prescribe the manner in which such assessment shall be made, and provide for adjusting all differences in relation to such assessment, and to do all other things necessary for making such assessment;" and the 115th section provides: "That they may levy a tax on the property assessed in said city, not exceeding ten cents in every hundred dollars of the assessed value thereof."

Here, then, is authority to the Mayor and Common Council to cause an assessment to be made, whenever, in their opinion, the public interest required it; and to levy a tax on the property assessed in said city, not exceeding ten cents in every hundred dollars of the assessed value thereof. Where is there any restriction as to the time when or the manner in which the tax levy was to be made? Why should it not be made as often as the public necessity demanded it? It is true that the levy was made but once in every year, and thus year by year came the accumulation of a debt which was the necessary outcome from the expenses the city officers had to incur in the proper discharge of their duties, the annual levy not being sufficient for that purpose.

The Supreme Court of the United States has said in the case of *Police Jury vs. Britton,* 15 *Wall.,* 566, "That a municipal corporation, which is expressly authorized to make expenditures for certain purposes, may, unless prohibited by law, make contracts for the accomplishment of the authorized purposes, and thereby incur indebtedness and issue proper vouchers therefor, is not disputed." This is a necessary incident to the express power granted.

The corporate authorities of Westminster have in no respect exceeded their authority in the premises, and did not, until so authorized by the Legislature, issue bonds or negotiable commercial paper. But if they had issued obligations, which were not legal in their character, yet

were founded upon just consideration for work and labor done, and for supplies furnished to the corporation, what was there to prevent the General Assembly of the State from authorizing the Mayor and Common Council to issue bonds and thus pay off its outstanding obligations ?

It is the undoubted right of the Legislature to regulate the affairs of every municipality in the State; no such corporation, not even the City of Baltimore, is independent of or free from the control of the General Assembly, which has the power not only to provide for the payment of just and equitable claims, though not strictly legal, against the corporation, but also by subsequent statutes to validate the invalid acts of the corporation in respect to such claims. *Bridgeport vs. Railroad Co.*, 15 *Conn.*, 475; *Bissel vs. Jeffersonville*, 24 *How.*, (*U. S.*,) 287 ; *Win vs. Macon*, 21 *Ga.*, 275; *New Orleans vs. Pantz*, 14 *La. An.*, 853; *Atchison vs. Butcher*, 3 *Kansas*, 104; *Allison vs. Railroad*, 9 *Bush*, (*Ky.*,) 247 ; *Guilford vs. Supervisors*, 13 *N. Y.*, 143.

In the case of *Mattingly vs. Dist. Columbia*, 97 *U. S.*, 687, Mr. Justice STRONG, delivering the opinion of the Court, says : " Congress may legislate within the district respecting the people and property therein, as may the Legislature of any State over any of its subordinate municipalities. It may, therefore, cure irregularities and confirm proceedings, which, without the confirmation, would be void because unauthorized, provided such confirmation does not interfere with intervening rights."

If this be sound law, what just cause for complaint has the appellant?

BRYAN, J., delivered the opinion of the Court.

The Legislature by the Act of 1886, chapter 176, authorized the Mayor and Common Council of Westminster to fund the floating debt of the corporation, as the same may have existed on the first day of February, eighteen

hundred and eighty-six.   And for this purpose, the cor-
poration was authorized to issue bonds to an amount not
exceeding three thousand dollars.   There can be no rea-
sonable doubt of the power of the Legislature to pass
this law.   It creates municipal corporations of this kind
at its own will, and invests them with such powers, con-
sistent with the Constitution, as the public good requires.
If the Legislature did not have this power, the administra-
tion of the public affairs of the State would be very seriously
embarrassed.   We are not aware that this power has ever
been denied by any judicial authority, and we may men-
tion the case of the *Police Board of Baltimore,* 15 *Md.,*
376, as a conspicuous instance, where 'it was very em-
phatically affirmed.   If the floating debt of the City of
Westminster had been contracted without due author-
ity, this legislative approval would have given it validity.
But we can have no doubt whatever of its power to make
contracts in the necessary prosecution of its corporate
business, within the limits of its charter, and in this way
to incur indebtedness.

A bill in equity was filed by John Smith of Wakefield
against Stephan, Fink, and others, in which it was alleged
that Stephan unlawfully assumed to be Mayor, and the
other defendants unlawfully assumed to be members of
the Common Council of the City of Westminster ; and
that they in conjunction were unlawfully exercising the
powers conferred by the charter of the city on the corpo-
ration; and that these persons were about to issue bonds
under the authority of the above mentioned Act of As-
sembly.   It was also alleged that the City of Westmins-
ter was not in debt, and that the pretence that said bonds
were to be issued to fund a debt of the city was false and
fraudulent.   An injunction was prayed to restrain the
defendants, and each of them, from selling and disposing
of the bonds.

The charge that these defendants were unlawfully exer-
cising corporate functions is founded on certain averments

of the bill, which impeach the legality of their election to the offices which they assume to hold. It is averred that the election was void and of no effect, because, in the language of the bill of complaint, " it was carried on and conducted without, and in the absence of, and without regard to, any registry or list of qualified voters." It is contended that the fifth section of the first Article of the Constitution refers to and governs this election; and that it was necessary that the judges who held it should have been furnished with a list or registry of qualified voters ; and that no one should have been permitted to vote whose name did not appear on such list. This section of the Constitution denies the right to vote at Federal and State elections, and municipal elections in the City of Baltimore, to all persons whose names do not appear in the list of registered voters. It makes no allusion to municipal elections in any other town or city. The distinction is clearly made in the Constitution between Federal and State elections on one side, and municipal elections on the other. It is impossible to mistake the meaning of the terms employed. An election held for the purpose of regulating the local affairs of a town or city under the provisions of its charter would never be mistaken for a State election. It is sufficient to say that no municipal elections except those held in the City of Baltimore are within the terms or meaning of the Constitution. The ninety-seventh section of the Public Local Law of Carroll County gives the right to vote at municipal elections in the City of Westminster, to the inhabitants who are qualified to vote for delegates to the General Assembly. The qualifications of voters are stated in the first section of the first Article of the Constitution. It is declared that every white male citizen of the United States, of the age of twenty-one years or upwards, who has been a resident of the State for one year, and of the county in which he may offer to vote for six months next preceding the election, shall be en-

Smith *vs.* Stephan, *et al.*

titled to vote in the election district in which he resides at all elections held in this State. Since the adoption of the Constitution, the right of suffrage has been extended to persons of African descent. The fifth section directs the General Assembly to provide by law for a uniform registration of the voters who possess the qualifications before prescribed. The qualification to vote was required to exist before a person had the right to be registered ; the registration consisted in making a list of those who were already duly qualified ; and it was made for the purpose of being used only at State and Federal elections, and municipal elections in the City of Baltimore. The right of an inhabitant of Westminster, therefore, to vote for Mayor and Councilmen must depend on the requirements of the Constitution, without reference to the registration list.

The averments of the bill of complaint do not show that the defendants are unlawfully exercising the powers of Mayor and Councilmen; and consequently this proceeding cannot be maintained against them. They are impleaded in their individual capacities for acts done, so far as this record shows, in the ordinary exercise of their corporate powers. They cannot be held to responsibility in such a suit. It belongs to the municipal corporation itself to defend the legality of these acts. In a bill in equity filed against it, if the averment that the City of Westminster is not in debt can be established, it will follow that the issue of the bonds authorized on the assumption of such indebtedness must be enjoined. In the preamble to the statute, which authorized these bonds, it is stated that "the Mayor and Common Council of Westminster is now indebted unto sundry persons in various sums of money, aggregating the sum of three thousand dollars and upwards." This statement shows the information which induced the Legislature to pass the statute; but it is not to be taken as evidence in a Court of justice. Instances are

found where declarations made by the legislative department must be received as proof by the Courts. They are usually cases where the Legislature was required by its duty to investigate, and make known facts of a public and general nature; or where such facts were made the basis for a public law. A question of indebtedness between A and B is a private transaction, which must be settled by the judicial department after hearing the parties interested.

The Court below refused the injunction prayed by the bill, and we agree in its ruling.

*Order affirmed with costs,*
*and cause remanded.*

(Decided 4th January, 1887.)


- Judge MILLER delivered the following opinion, concurred in by Judge STONE, dissenting in part from the foregoing opinion of the Court:

The charter of the City of Westminster says that the inhabitants of said city *"qualified to vote* for delegates to the General Assembly" shall annually elect a Mayor and Common Council, and it is plain beyond question that the Constitution provides that after a general registration law shall have been passed, (as has long since been done) no one shall vote for delegates to the General Assembly "unless his name appears in the list of registered voters." *Cons., Art.* 1, *sec.* 5. If, therefore, the Constitution has made registration essential to the right *to vote* for delegates to the General Assembly how can it be said that any one is qualified so *to vote* without being so registered? According to my understanding of the meaning of the term "qualified to vote," they mean that the citizen who comes up to the requirements prescribed by the instrument which regulates the right of suffrage is so qualified, and he who does not come up to such requirements is not

Brown, Graves & Co. *vs.* Ambler, *et al.*

so qualified. If then the framers of the Constitution, and the people who adopted it, have seen fit to say that no one shall vote unless he is registered, is not registration just as much a qualification as age or residence, and is not non-registration just as much a disqualification under such an instrument, as non-age or non-residence? If a man cannot vote without being registered, it seems to me, with great deference to the differing opinion of others, to be a mere quibble upon words, to say that he is "qualified *to vote*" without being registered. In my opinion the inhabitants of Westminster who were not registered voters, are not qualified to vote and have no right to vote for Mayor and Common Council of that city, because without being so registered they are not qualified to vote and have no right to vote for delegates to the General Assembly. I am constrained therefore to dissent from so much of the opinion of the majority of the Court in this case, as places a different construction upon these terms of the charter. In my judgment the affirmance of the order appealed from may well be placed on other grounds.

I am instructed by Judge STONE to say that he concurs in this opinion.