HILL ET AL. *v.* MAYOR AND TOWN COUNCIL OF COLMAR MANOR ET AL.

[No. 123, October Term, 1955.]

*Decided May 4, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Bill L. Yoho* and *Frank P. Flury,* with whom were *Hoyert & Yoho* on the brief, for appellants.

*Charles T. Finley,* with whom was *Blair H. Smith* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellants, Harry W. Hill and Olin L. Merchant, filed a petition in the Circuit Court for Prince George's County for a writ of mandamus to require the Mayor and Town Council of Colmar Manor (1) to count write-in votes cast for them, respectively, for the offices of Mayor and Councilman for the Third Ward, (2) to declare the installation of others in those offices to be void, (3) to install the appellant Hill as Mayor and the appellant Merchant as Councilman

for the Third Ward, and (4) to produce records and perform other acts more or less incidental to the foregoing action. The Mayor and Town Council of Colmar Manor, a municipal corporation (usually referred to below as "Colmar Manor" or the "Town"), the appellants' rivals as candidates for Mayor and Councilman and the Board of Election Supervisors of Colmar Manor were named as respondents. They filed a demurrer and an answer to the petition. Their demurrer was sustained and the petition was dismissed. The appeal is from the order of dismissal.

The question at issue is whether or not the write-in votes for the appellants should have been counted. The answer depends upon the construction of the charter of Colmar Manor.

The Town was incorporated by Chapter 178 of the Acts of 1927, and its charter, as amended, constitutes Sections 373 to 415, inclusive, of the Code of Public Local Laws of Prince George's County (Everstine, 1953 Edition). For brevity, those sections of the Prince George's County Code which are included in the Charter of Colmar Manor will be referred to by their respective numbers in that Code, but as parts of the Charter of Colmar Manor.

Section 380 of the Charter of Colmar Manor (as amended by Chapter 37 of the Acts of 1933, and not since amended) provides that "A person shall be deemed a candidate for the office of Mayor or Councilman and his name as such candidate be placed on the ballots prepared by the Board of Election Supervisors provided such person" possesses certain qualifications referred to below "when such person shall have at least fifteen days * * * prior to the date of * * * election, filed with the Board of Election Supervisors a petition, signed by at least ten qualified voters of said town, setting forth (a) the name and address of the candidate, (b) the ward from which he seeks election, (c) the facts showing that he is eligible to the office of Mayor or Councilman, and (d) that he desires his name placed on the ballot as a candidate." This Section further provides that within five days after the time for filing has expired, the Board shall "cause to be posted

in such manner as shall give general publicity the names of the candidates and the positions to which they aspire."

The qualifications which Section 380 requires relate to age, residence and the ownership of property in the Town. The petition alleges in rather general terms that the appellants meet these requirements. Since the demurrer admits such allegations and since the case was decided on the demurrer, no more need now be said on this subject.

For reasons which are not disclosed on the record the appellants did not follow the procedure prescribed by Section 380 to have their names printed on the ballots. All of the votes which they received were write-ins; and according to the petition, each of the appellants received more votes by this method than did their respective opponents whose names were printed on the ballots. Blank lines were provided for writing in the names of candidates whose names were not printed on the ballots and boxes were placed at the end of such lines for "X" marks. The petition alleges and the demurrer admits (though the answer denies) that for more than twenty years prior to the 1955 election "the right of the voters of Colmar Manor to vote by writing in the name of the candidate of their choice has been recognized and upheld."

The report of the Board of Election Supervisors of the Town showing the result of the vote as above stated was presented at a special meeting of the Mayor and Town Council held on July 21, 1955. By a vote of 3 to 2 (Messrs. Torvestad and Rian being 2 of the 3 who constituted the majority), a resolution was adopted declaring Messrs. Torvestad and Rian to have been duly elected as Mayor and as Councilman from the Third Ward, respectively. The write-in votes were rejected. The appellees contend that they were properly rejected, and the Circuit Court sustained their contention on the basis of its interpretation of the cases of *Jackson v. Norris,* 173 Md. 579, 195 A. 576, and *Board of Supervisors of Elections of Baltimore City v. Blunt,* 200 Md. 120, 88 A. 2d 474, though the Court conceded that the petitioners' argument based upon an analogy to the case of *Landover Hills v. Brandt,* 199 Md. 105, 85 A. 2d 449, was not without force.

The question in this case is solely one of statutory construction.

In *Jackson v. Norris, supra,* which contains an interesting history of the development of the ballot in this State, it was held that under Sections 1 and 5 of Article I of the Constitution of Maryland (relating to the elective franchise) voting machines for use in elections in Baltimore City had to provide means for a voter to write in the name of a candidate of his choice whose name was not printed on the ballot. In delivering the opinion of the Court, Judge Parke said (at 173 Md. 603-604, 195 A. 588):

"The conclusion of the court that it is the constitutional right of an elector to cast his ballot for whom he pleases, and that it is necessary for him to be given the means and the reasonable opportunity to write or insert in the ballot the names of his choice, is subject to this limitation, that the right is not applicable to primary elections, nor to municipal elections other than those of the City of Baltimore. This exception must be made, since the provisions of article 1, section 5 of the Constitution have been held to apply solely to the right to vote at federal and state elections, and municipal elections in the City of Baltimore."

The historical review contained in *Jackson v. Norris, supra,* shows that a provision for write-in votes which had appeared in the first general ballot law (Chapter 538 of the Acts of 1890) merely preserved a pre-existing right and that such a provision continued in the Code until it was eliminated by Chapter 581 of the Acts of 1924. An opinion of the Attorney General rendered in 1926 stated that the purpose of the 1924 Act was to shorten the ballot by eliminating the blank spaces. A second Act was passed in 1931 to eliminate a provision for counting written-in votes, which had apparently been overlooked at the time of the 1924 repeal of the provision authorizing writing in the names of candidates. This bit of history is important for its bearing on the holding in the *Blunt Case.*

Before turning to that case it may be well to emphasize that the quoted passage from *Jackson v. Norris* with which

we are concerned in the instant case dealt with the *constitutional* rights of voters to write in the names of candidates of their choice.

In *Supervisors v. Blunt, supra,* the question was whether or not an opportunity to write in the name of a candidate had to be afforded in a presidential primary election. After quoting with approval the passage from *Jackson v. Norris,* above quoted, this Court stated that the question was solely one of statutory construction, and held that the write-in privilege did not exist.

In reaching this conclusion, the Court rejected the contentions of the appellees which rested largely upon the following statutory provisions, all of which are contained in Article 33 of the Code and which are referred to by their numbers in the 1951 Edition, with their numbers in the 1947 Supplement to the 1939 Edition being given in parentheses:

> (a) Section 68 (62), under the sub-title "Elections",—the sentence reading:
> "Nothing in this Article contained shall prevent any voter from writing on his ballot and marking in the proper place the name of any person other than those already printed for whom he may desire to vote for any office, and such votes shall be counted the same as if the name of such person had been printed upon the ballot and marked by the voter."
> (b) Section 212 (205), under the sub-title "Miscellaneous Provisions", which defines the word "election" as including "elections had within any county or city for the purpose of enabling voters to choose some public officer or officers under the laws of this State or of the United States."
> (c) Section 64 (b) (formerly 58 (b)), under the sub-title "Nominations and Primaries" (which under 64 (a) (formerly 58 (a)) applies to "Every candidate for the nomination for a State office, that is to say, an office filled by the vote of all the registered voters of the State"), providing in part that:
> "* * * said primary election shall be held and

"conducted and determined in the manner and form provided by this Article for general elections and subject to all regulations, requirements and provisions as prescribed by this Article for general elections, in so far as the same is or may be applicable to said primary elections, except as may be herein otherwise provided."

It may be noted in passing that under Section 56 (5) (formerly 50 (5)), ballots for presidential primaries are to be prepared and are to be marked and cast in the same manner as prescribed for gubernatorial primary elections.

Several other provisions of Article 33 were also involved in the *Blunt Case*. Among them were provisions contained in the "Instructions" to absentee voters in statewide and in Baltimore City municipal elections. Under the statewide election instructions write-in votes were not and are not permitted in primary elections; under the instructions applicable to Baltimore municipal elections they were and are permitted. See Code (1951), Article 33, Sec. 144, par. (g) of "Instructions" (formerly 136, par. (g)) and Sec. 224 (c) (7) (formerly 217, par. (g)).

The opinion of this Court in the *Blunt Case*, which was written by Judge Henderson, points out that the sentence from Section 68 of Article 33 quoted above had been restored by the Codifier in the 1939 Edition of the Code, despite its deletion by Chapter 581 of the Acts of 1924, in order to conform with the decision in *Jackson v. Norris, supra,* and that this sentence had been re-enacted without change in a compilation or rearrangement of the election laws, with such amendments as the Legislature thought desirable, by Chapter 934 of the Acts of 1945. The opinion, after quoting the passage from *Jackson v. Norris* already set forth herein, states that this sentence from Section 68 (formerly 62) "could not be construed to accomplish a purpose directly opposed to the limitation * * * expressed" in *Jackson v. Norris*.

The mere restoration of this sentence to the laws relating to general elections did not give it an effect contrary to the limitation stated in the opinion which brought about its re-

instatement. If that had been all that was involved in the case the opinion could have stopped at that point. It did not, however, stop there, but went on to consider the applicability to primary elections of the language of the restored provision itself and whether the incorporation by reference clause of Section 64 (b) was sufficient to adopt the write-in provisions of the general election law as a part of the law relating to primary elections. Approaching the matter from this point of view, we find that the result of the *Blunt Case* is due to the language of Section 68 itself indicating its inapplicability to primary elections, to the exceptions in the incorporation by reference clause of Section 64 (b) of Article 33 which are based upon the past or present inapplicability of provisions relating to general elections, and to the expressed view that write-in votes are "inconsistent with the whole theory of primary elections."

In this case we may start with the premise that the reinstatement of the write-in sentence of Section 68 of Article 33 was no more effective to achieve a result opposite to a limitation stated in *Jackson v. Norris, supra,* than it was in the *Blunt Case.* But that leads us to the other inquiries such as those with which the *Blunt Case* was concerned—the applicability of the language of the pertinent sentence of Section 68 of Article 33 to a municipal general election and the sufficiency of the incorporation by reference provision contained in Section 377 of the Charter of Colmar Manor.

Undoubtedly, the Legislature has plenary powers which are not restricted by the provisions of Article I of the Constitution of Maryland with regard to both primary elections and municipal elections (outside of the City of Baltimore). *Jackson v. Norris, supra; Smith v. Stephan,* 66 Md. 381, 7 A. 561, 10 A. 671 (municipal election) ; *Hanna v. Young,* 84 Md. 179, 35 A. 674 (municipal election) ; *Johnson v. Luers,* 129 Md. 521, 99 A. 710 (municipal election) ; *Hennegan v. Geartner,* 186 Md. 551, 47 A. 2d 393 (primary election) ; *Landover Hills v. Brandt, supra* (municipal election). This does not mean, however, that both of these types of elections *must* be treated in the same way as to write-in votes or otherwise.

It may be conceded that the Legislature could, if it chose, bar write-in votes in municipal general elections (subject to the Baltimore City exception), but by the same token it may also authorize them. The question is, has it done so?

Though Section 68 of Article 33 is not by its own terms applicable to a municipal general election, we find nothing in it which is incompatible with its being made applicable to such an election by an appropriate incorporation by reference clause. Indeed, the sharp distinction between a nomination for and an election to public office which the Court stressed in the *Blunt Case* supports its applicability to an actual final election. Moreover, we find no incompatibility between its provisions for write-in votes and the theory upon which general municipal elections are based. They are like general elections for county offices and have none of the features which distinguish primary elections from general elections and which led the Court to say in the *Blunt Case* that "the write-in privilege was never applicable to primary elections, and, indeed, is inconsistent with the whole theory of primary elections."

The case then turns on the sufficiency of the language used in the incorporation by reference provision of Section 377 of the Colmar Manor Charter, and upon the effect of the exception therein stated when read in conjunction with Section 380. The pertinent sentence of Section 377 reads as follows:

> "All elections for town purposes shall as nearly as practicable be conducted as are elections for county officers in Prince George's County, except as herein provided."

We shall return to these questions after a rather full discussion of *Landover Hills v. Brandt*, already cited, which we think is controlling.

In that case a question was raised as to whether there was or was not a right to court review of an election controversy. In that case Section 12 of Chapter 465 of the Acts of 1945 which incorporated the town of Landover Hills authorized the appointment of judges of election and provided that "The rules and procedure of conducting the elec-

tion shall be governed by the general election laws of the State of Maryland on any question not provided for in this charter." There was a further provision that the ballot boxes containing the ballots should be kept for thirty days "unless there is a recount, in which case they shall be kept until said recounting is finally concluded." This Court referred to what are now Sections 115 and 116 of Article 33 of the Code (then Sections 108 and 109) which cover all cases of contested elections not provided for by the Constitution or by the preceding Section of Article 33, and provide for court review and for an appeal to this Court. The Court also referred to what is now Section 212 (then 205) of Article 33 which defines an election as including "elections had within any county or city for the purpose of enabling voters to choose some public officer or officers under the laws of this State. * * *" It then held that the provisions for court review contained in the general law were adopted by reference in the Charter of Landover Hills.

The *Landover Hills Case,* in which the opinion was also written by Judge Henderson, is not cited in the *Blunt Case,* and the Court evidently thought it unnecessary to distinguish it. The appellees now undertake to do so on the ground that in the *Landover Hills Case* only a procedural electoral right was incorporated by reference in the Charter of that town, whereas in the *Blunt Case* a substantive right was held not to be so incorporated.

The exact language of the Court in the *Blunt Case* relating to the creation of a new substantive right has already been quoted. The result that no such right was created by the "guarded incorporation by reference of the general election procedure" is supported by one of the limitations expressed in the incorporation by a reference provision itself—"insofar as the same is or may be applicable to said primary elections"—when considered against the Court's holding that the write-in privilege had never been applicable to primary elections "and, indeed, is inconsistent with the whole theory of primary elections."

In the *Landover Hills Case* incorporation by reference of the laws relating to general elections was restricted to "the

rules and procedure of conducting the election." No such narrow limitation of incorporation by reference is present in this case.

Apart from the possible effect of Section 380 of the Charter of Colmar Manor, which is considered below, there is no prohibition against incorporating by reference any of the substantive rights which are conferred upon voters by the general election law and are not prohibited by the Charter of Colmar Manor. (We need not pass upon the appellants' contention that in the absence of a prohibition against write-in votes the write-in privilege exists; but this comment is not to be taken as indicating agreement with that contention.) We find nothing in the history or theory of this Charter comparable to the considerations which led this Court in the *Blunt Case* to refuse to extend the scope of a relatively weak incorporation by reference provision to a field in which the write-in privilege had never existed and to a type of election with which it was held to be inconsistent.

The appellees contend that the granting of the write-in privilege would be inconsistent with the provisions of Section 380 and hence that it is excluded by the concluding—"except as herein provided"—clause of Section 377.

We have already set forth the salient provisions of Section 380. We think that it states what a prospective candidate must do in order to have his name printed on the ballot, but we do not think that it should be construed as barring a vote for anyone whose name is not printed on the ballot.

In this connection it is interesting to compare the provisions of Section 68 of Article 33 of the Code with those of Section 380 of the Charter of Colmar Manor. Under each of these Sections the appropriate election officials are required to have ballots printed containing the names of all candidates who have been duly nominated. The Colmar Manor election officials are required to print the names of those who filed their nominating petitions fifteen days before the primary; the general election law relieves the County election officials of any obligation to print the name of a candidate not certified to them at least ten days before the meeting. That alone would suggest that getting one's name

printed on the ballot is not a prerequisite to being voted for (no matter how much it may help in winning the election). We see no reason for drawing one conclusion from the language of the Town Charter and another from the comparable language of the general statute. A write-in authorization is as compatible with one as with the other.

We may add that if it was intended to limit the voting under the Colmar Manor Charter to those whose names were printed on the ballot, no useful purpose would be served, in the case of a candidate who happened to be the only one to file a nominating petition for some office, by those provisions of this Section which require the posting before the election of the names of candidates and the offices which they seek in such manner as will give general publicity thereto. If, in an election for a State office, only one candidate has been nominated therefor, it is still necessary that his name be printed on the ballot and that an opportunity for write-ins be given. True, this is a constitutional and not merely a statutory matter, but it is a familiar and persuasive analogy.

In addition, in the light of the distinction between a nomination for public office and an election to public office sharply drawn in the *Blunt Case,* what was said in *Jackson v. Norris,* at 173 Md. 601, 195 A. 587, seems as applicable here on the question of statutory construction as it did there in interpreting constitutional provisions. The Court there observed that "* * * the political importance of the preservation of the right considered is enhanced by its potential value in a civic crisis where, because of want of time or of adverse political conditions, an aroused electorate would have as its sole recourse for the expression of the popular will the right to vote in an election for its own freely chosen candidates." The comments of the Court in that same case on restricting the voter to a choice among official nominees and on the insufficiency of the right of a voter to join in signing a nominating petition as compared with his complete freedom in voting for anyone of his own choosing, are also pertinent.

The question is one of legislative intent, not of constitutional right nor yet of legislative power. A rule under which

the effectiveness or extent of incorporation by reference of one statutory provision into another would depend upon whether the matter to be incorporated is minor or procedural on the one hand, or major or substantive on the other, would lead to endless confusion. The *Landover Hills* and the *Blunt Cases* do not rest upon such a rule or distinction; each rests upon the interpretation of the language used in the light of the circumstances surrounding its use.

The incorporation-by-reference clause of the Charter of Colmar Manor is broader than that of the Charter of Landover Hills; it is both broader and stronger than that involved in the *Blunt Case*. We think that it is not limited by Section 380 of the Charter of Colmar Manor and that it is sufficient to incorporate by reference the write-in vote provisions contained in Section 68 of Article 33 of the Code (1951).

The appellees have urged in opposition to this view that the charters of some other municipalities in Prince George's County expressly confer the right to write in the names of candidates and hence that the Legislature did not intend to permit such voting by the general language used in Section 377 of the Charter of Colmar Manor. We are of the opinion that the inference which the appellees seek to draw from this is too remote to offset what we think is clearly within the scope of the incorporation by reference provisions of Section 377 which were added by the 1931 amendment to the Charter.

We are accordingly of the opinion that the write-in votes for the appellants were proper and should have been counted.

We have not gone into any discussion of the effect of the practice of permitting write-in votes which the appellants allege to have long been established, because in our view of the case it is unnecessary to do so. We shall merely observe that, in our opinion, the benefits which the appellants seek to draw from this asserted long continued practical construction of the Charter do not, as the appellees contend, involve any extension of the powers granted to the Town. The right involved is that of the voters. See *Jackson v. Norris, supra.*

In accordance with the views above expressed the order appealed from will be reversed.

*Order reversed, with costs to the appellants.*