**Reba Williams DIXON, et al.**

v.

**MARYLAND STATE ADMINISTRATIVE BOARD OF ELECTION LAWS, et al.**

Civ. No. JFM–87–2023.

United States District Court, D. Maryland.

June 13, 1988.

Frank M. Dunbaugh, Annapolis, Md., for plaintiffs.

J. Joseph Curran, Jr., Atty. Gen., Annapolis, Md., for defendants.

## OPINION

MOTZ, District Judge.

Four members of the Socialist Workers Party, all of whom are registered voters in Maryland and two of whom were candidates in the 1987 Baltimore City election, challenge Maryland's requirement that write-in candidates for public office pay a filing fee.[1] The amount of the fee in question is $150, and Maryland law provides for its waiver as to any candidate who files an affidavit of indigency.[2] The two plaintiffs who were candidates do not contend that they are indigent.

The parties have cross moved for summary judgment. Defendants' motion will be granted, and plaintiffs' motion will be denied.

The amount of fee charged to a write-in candidate for certification in the general election is the same as the fee charged in primary elections to a candidate who runs to become a political party's nominee. The statute imposing the write-in fee was part of a series of amendments, made to the Maryland Election Code in 1975 and 1984, which were designed to subject write-in candidacies to broader regulation. These amendments had their origin in the 1974 Baltimore City election in which a candi-

---

1. Soon after this action was filed, this Court denied a motion for preliminary injunction, and the 1987 election was held. Thereafter, the parties filed summary judgment papers. Although plaintiffs do not seek to challenge the results of the 1987 election, the issues here presented are not moot because they are "capable of repetition, yet evading review." *See, e.g. Roe v. Wade,* 410 U.S. 113, 125 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911). On the other hand, to the extent that plaintiffs challenge the filing fee on the ground that it would thwart the will of the electorate by preventing election of a write-in candidate who had won the most votes, they present a claim which is not ripe for decision. That issue will properly be decided when such an election result has occurred. Furthermore, it is a question which,

at least in the first instance, should be resolved by the Maryland Courts under Maryland law. *See* Md. Const. Decl. of Rights, art. 7; Md.Ann. Code art. 33, Section 14–1(i) (1986); *see also Hill v. Mayor of Colmar Manor,* 210 Md. 46, 53–54, 122 A.2d 462, 466 (1956); *Jackson v. Norris,* 173 Md. 579, 598–600, 195 A. 576, 585–86 (1937).

2. One hundred fifty dollars is the fee charged to write-in candidates for the office of Mayor and of President of the City Council, the two offices run for by plaintiffs Dixon and Burroughs. Under the statutory scheme the filing fees can range from a minimum of $50 for certain local offices to a maximum of $290 for state-wide offices. *See* Md.Ann.Code art. 33, Section 4A–6 (1986).

date who had been defeated in the Democratic primary waged a major write-in campaign during the general election for the office of State's Attorney. In addition to imposing the fee here in question, the 1975 legislation required each write-in candidate to appoint a campaign chairman and treasurer, to file his/her name with the local board of supervisors of elections and to file periodic reports of all contributions received and expenditures made. *See* Md. Ann.Code art. 33, Section 26–4 (1986). The 1984 amendments required boards of canvassers to include in the official election returns votes received by all write-in candidates who had filed certificates of candidacy, not just (as before) the votes of write-in candidates who had received more than 1% of the vote. *Compare* Md.Ann.Code art. 33, Section 17–5(b) (1983) *with* Md.Ann. Code art. 33, Section 17–5(b) (1986). Write-in candidates have also been made eligible to obtain benefits from the Fair Campaign Financing Fund, an experimental fund that is intended to assist candidates for Governor and Lieutenant Governor in 1990. *See* Md.Ann.Code art. 33, Section 31–4(c)(8)(iii) (Supp.1987). In short, under the current Maryland statutory scheme, write-in candidates are treated comparably to candidates whose names appear on the ballot.

■ The first question here presented is the standard under which this Court is to review the $150 filing fee. In *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), the Supreme Court "closely scrutinized" a Texas filing fee to find if it was "reasonably necessary to the accomplishment of legitimate state objectives...." However, the Court adopted that standard because it found that the fees under the Texas statutory scheme—which could be as high as $8,900 and which could not be waived for indigency—posed a significant barrier to a candidate's access to the ballot. In that connection the Court cautioned that the mere existence of a barrier to ballot access "does not of itself compel close scrutiny," and it indicated that, "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Id.* at 143, 92 S.Ct. at 856.

The Court also emphasized, while striking down the Texas fee, that nothing in its opinion was "intended to cast doubt on the validity of reasonable candidate filing fees...." *Id.* at 149, 92 S.Ct. at 859.

The $150 fee involved in this case is far more modest than the fees involved in *Bullock* or those which were struck down, under at least implicit use of a close scrutiny standard, in *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). Moreover, the Maryland Election Code—unlike the Texas and California statutes challenged in *Bullock* and *Lubin*—provides that any candidate may obtain a waiver of the $150 fee by filing an affidavit of indigency. In light of these facts, when the Maryland fee is "examined in a realistic light," it cannot be said that it poses a significant obstacle to a candidate's eligibility to run or to the voters' ability to vote for him. Therefore, the standard for this Court to apply is the traditional rational basis test recognized by the Court in *Bullock* and eschewed by it there only because of the severe ballot access restrictions created by Texas law.

■ The first interest which the State has advanced here in support of the $150 filing fee is helping to defray the cost of a write-in candidacy. Such costs include notifying election judges of the identity of certified candidates, the counting of write-in votes, monitoring the financial statements submitted by write-in candidates and advertising their names in newspapers prior to the election. The imposition of a $150 fee to pay these costs, and, more importantly, to prevent them from being incurred by the filing of frivolous candidacies, does not appear to be unreasonable. Indeed, in *Bullock* the Court acknowledged that preserving the public fisc, at least in relieving a State treasury of the cost of conducting primary elections, is a legitimate state objective which would provide a rational basis for a fee system. *See Bullock v. Carter*, *supra*, 405 U.S. at 147, 92 S.Ct. at 857–58. However, *Bullock* and *Lubin* draw into question the constitutionality of requiring candidates to finance elections, even in part, and the constitutionality of such a

requirement may be particularly dubious where it is imposed upon a candidate in a *general* election. Accordingly, the State here more strongly emphasizes the second interest which it advances in support of requiring write-in candidates to pay a filing fee when certifying their candidacy: the protection of the integrity of the electoral system by denying official recognition to frivolous candidates.

In *Bullock* and *Lubin* the Court recognized that a state has a fully legitimate interest, if not a duty, in attempting to assure that only serious candidates appear on the ballot. The Court's concern about the Texas and California fee systems was that, under them, serious candidates, who could not afford to pay a filing fee, were excluded from running. That problem is cured by the indigency waiver provided under Maryland law. Thus, the only question presented here is whether the fact that this case involves write-in candidates, rather than candidates seeking inclusion on a ballot, vitiates the legitimate state interest, recognized in *Bullock* and *Lubin*, in discouraging frivolous candidacies.

That interest may well be greater in cases where a candidate seeks to have his/her name placed on the ballot than in a case involving a write-in candidacy. An excessively long ballot may produce substantial voter confusion and cause voting fragmentation. As the Supreme Court noted in *Lubin*, a ballot of limited size has been the result of voting reform begun by the Progressive movement of the early twentieth century. *See Lubin v. Panish, supra*, 415 U.S. at 712–13, 94 S.Ct. at 1318. However, these same concerns are invoked, if to a more limited extent, by write-in candidacies as well. Although a write-in candidate's name does not appear on the ballot, it does appear on public notices which must be issued in advance of the election and on lists which must be posted at the polling places. Moreover, potential confusion and fragmentation aside, the State has an interest in preserving the fundamental dignity of the election process. That process is demeaned by all frivolous candidacies by whomever they are pursued, including those seeking publicity for com-mercial purposes, *see id.* at 717, 94 S.Ct. at 1320–21, those whose only qualification for office is that they bear the same name as some public figure or those who merely want their name recorded in the historical record. Although the Maryland filing fee does not perfectly protect against this problem (wealthy and indigent frivolous candidates can still run), it is rationally related to a legitimate end.

A separate order effecting the rulings made in this Opinion is being entered herewith.