(Decided 8th June, 1892.)

# C. W. F. KEMP, CHARLES G. DENTRY, and GEORGE TWEDDLE, Officers of Registration, &c. *vs.* FRANCIS V. OWENS.

## *Registration— Voter— Residence.*

O. was a legal resident of the first precinct of the twenty-second ward of Baltimore City in 1890, and was registered as a qualified voter at the registration of that year, said precinct being in the second legislative district of the city. He remained there until late in September, 1891, when he moved to the ninth precinct of the seventh ward which is in the same legislative district. HELD :

That the name of O. was properly stricken from the list of qualified voters of the first precinct of the twenty-second ward, by the officers of registration at the October sitting of 1891.

O. having removed from the first precinct of the twenty-second ward to the ninth precinct of the seventh ward, ceased to be

entitled to vote in the former ward, but was entitled to vote in the latter; both wards being in the same legislative district·

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, and MCSHERRY, J.

*William S. Bryan, Jr.*, and *Peter J. Campbell*, for the appellants.

*John C. Rose*, for the appellee.

MCSHERRY, J., delivered the opinion of the Court.

In eighteen hundred and ninety, Francis V. Owens was a legal resident of the first precinct of the twenty-second ward of Baltimore City, and was registered as a qualified voter at the registration of that year from No. 1728 North avenue. Said precinct is in the second legislative district of the city. He remained there until late in September, eighteen hundred and ninety-one, when he moved to 1616 North Wolfe street, in the ninth precinct of the seventh ward, which is also in the second legislative district. At the October sitting of eighteen hundred and ninety-one his name was stricken from the lists of qualified voters of the first precinct of the twenty-second ward. He appealed and the Judge who heard the case ruled that there was error in striking the name of Owens from the lists and ordered it to be restored. From that ruling this appeal has been taken by the officers of registration.

There is but a single question involved, and that is, was the action of the officers of registration of the first precinct of the twenty-second ward in striking the

name of Owens from the list of qualified voters of that precinct, right or not? If Owens was no longer entitled to vote in the first precinct of the twenty-second ward after his removal therefrom in September, eighteen hundred and ninety-one, the officers of registration were right in striking his name off. If, upon the other hand, he was still entitled to vote in that precinct notwithstanding his removal therefrom to another precinct in a different ward, but within the same legislative district, then there was error in the action of the officers of registration.

Section one of Article one of the Constitution of Maryland prescribes the qualifications of a voter. In brief, these are that he shall be a male citizen of the United States of the age of twenty-one years or upwards, who has been a resident of the State for one year, and of the legislative district of Baltimore City, or of the county, in which he may offer to vote, for six months next preceding the election. Possessing these qualifications, he is declared to ''be entitled to vote in the *ward* or *election district* in which he *resides*, at all elections hereafter to be held in this State.'' When, therefore, being a citizen of the United States, he has been a resident of the State for one year and of a legislative district of Baltimore City for six months, he becomes entitled to vote in the *ward* in which he resides The constitutional requirement as to residence relates, first, to the length of that residence in the State, and, secondly, to its length in the legislative district or county. No period of time is fixed or named for a residence in a *ward*. The wards of Baltimore City, like the election districts of the counties, are mere subdivisions, and residence for a particular length of time in either, except in so far as they form parts of legislative districts or counties, is not one of a voter's qualifications. His right to vote does not depend on his residence for six months

Kemp, *et al. vs.* Owens.

in any particular ward of the city or election district of a county, but the residence for six months in the legislative district or county entitles him to vote in the ward or election district in which he then resides. Having the requisite qualifications, he may move from place to place within a legislative district or county, but he can only vote in the ward or election district in which he resides at the time he offers to vote, provided he be duly registered in that ward or election district. As a consequence of this, it follows that he cannot lawfully vote in a ward or election district in which he does not reside, even though that ward or election district be within the legislative district or county where he has his residence. And where he cannot lawfully vote, he is not entitled to register, or to remain registered.

Owens, having removed from the first precinct of the twenty-second ward to the ninth precinct of the seventh ward, ceased to be entitled to vote in the twenty-second ward, but was entitled to vote in the seventh—both wards being in the same legislative district. In other words, by moving from one ward to another in the same legislative district, he did not lose his right to vote in that legislative district, but he was no longer authorized to vote in the ward from which he had removed. It therefore became the duty of the officers of registration, under the *Act of* 1890, *ch.* 573, *sec.* 19, to strike his name from the list of qualified voters of the first precinct of the twenty-second ward; and this they did. The Judge below was consequently in error in ordering the officers to re-instate his name. For the reasons we have given, this Court at the last October Term, reversed the order appealed from; and as no other question is presented by the record, we confine this opinion to the precise point involved.

*Order reversed, with costs.*

(Filed 8th June, 1892.)

Kemp, *et al. vs.* Owens.

BRYAN, J., delivered the following concurring opinion:

In the year 1890, Owens was a resident and a duly qualified voter in the first precinct of the twenty-second ward of the City of Baltimore, and in that year was registered as such. This precinct was in the second legislative district and in the second congressional district. He retained his residence until the latter part of September, 1891, when he removed to the ninth precinct of the seventh ward, which is in the second legislative and third congressional district. At the October sitting the officers of registration struck his name from the list of voters. On appeal, the Judge of the Court of Common Pleas ordered his name to be restored to the list. The registers have brought this ruling before us for review.

The qualifications of the voter are described in the first Article of the Constitution. It is declared in the first section that every male citizen of the United States, of the age of twenty-one years, or upwards, is entitled to vote; provided, he has been a resident of the State for one year, and of a county or a legislative district of the City of Baltimore for six months; and it is further declared, that he is entitled to vote in the ward or election district where he resides at all elections held in the State. A certain length of residence is necessary before the right of suffrage is acquired; but when acquired, this right is to be exercised in the ward or election district where the voter resides at the time. We cannot add anything to the qualifications prescribed in the Constitution; neither can we take anything from them. Residence for a length of time in the State, and in the county or legislative district is required in clear and explicit terms; but nothing is said about the length of time which the voter must reside in the ward or election district where he offers to vote. The Constitution has made no requirement on this subject, and the Courts can make none. But there is another portion

of this section which we must consider. It is in these words: "And in case any county or city shall be so divided as to form portions of different electoral districts, for the election of representatives in Congress, senators, delegates, or other officers, then, to entitle a person to vote for such officer, he must have been a resident of that part of the county or city, which shall form a part of the electoral district, in which he offers to vote for six months next preceding the election, but a person who shall have acquired a residence in such county or city, entitling him to vote at any such election, shall be entitled to vote in the election district from which he removed, until he shall have acquired a residence in the part of the county or city to which he has moved." The language must be construed so as to make all portions of the section in harmony with each other, and so as to secure the exercise of the right of suffrage to every one who possesses the constitutional qualifications. At the time of the adoption of the Constitution a mode of voting prevailed, with the sanction of law, and had prevailed for an indefinite time, in accordance with which the names of all the persons voted for were placed on the same ticket, and the voter was allowed to cast only one ballot. He could not vote for candidates for one or more offices at one voting precinct, and then go to another and vote for candidates for other and different offices. The same method is still pursued and no other is permitted by law. And the Constitution of the United States, then as now, gave a right to vote for members of Congress to every person who was qualified to vote for the House of Delegates. The second section of the first Article is in these words: "The House of Representatives shall be composed of members chosen every second year by the people of the several States, and the electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State

Kemp, *et al. vs.* Owens.

Legislature." It must of course be assumed that the Convention which framed the State Constitution, had in view the legal and constitutional provisions which existed at the time on the subject of suffrage. And, of course, it was their intention that every one should have a full and fair opportunity to vote, who was entitled to the elective franchise. Having distinctly defined the place where the voter is to cast his ballot, and knowing that he could not cast it a second time in another place, they must have intended that he should have a right to vote there, once and for all, for all the candidates for whom he was entitled to vote. The right to vote for a member of Congress grows out of, and is dependent on, the right to vote for members of the House of Delegates. Now if he cannot vote for both these offices in the ward or election district where he resides, his right of suffrage is to a great extent defeated. He is deprived of one of the primal privileges of citizenship. Suppose that a literal and verbal interpretation of the language which we have quoted from the first section of the first Article of the State Constitution, would impair the rights of the voter which are declared in the previous part of the same section; or would impair any of his rights under the Constitution of the United States; or would impede and embarrass the actual enjoyment of them to such a degree as virtually to defeat them; then most unquestionably such interpretation ought to be rejected. And a construction ought to be adopted, which would give effect to the obvious purpose and intent of the whole section. The elective franchise is the highest right of the citizen, and the spirit of our institutions requires that every opportunity should be afforded for its fair and free exercise. However ambiguously or obscurely statutes or Constitutions may be phrased, it would not be just to give them a construction in hostility to the principles on which free governments are founded. The

legislative districts of the City of Baltimore are well known divisions for electoral purposes; they are the parts of the city, which are specially named in the Constitution, when the requirement of six months residence is made an essential and indispensable qualification of the voter, and to them the language of the section is legitimately referred, where provision is made for the case when the city may be so divided as to form portions of different electoral districts for the election of public officers. Without making a minute verbal examination of this section, we may clearly see that every voter who has resided for six months in a legislative district of the City of Baltimore, has a right to vote at all elections held in that district, and that he can vote only in the ward in which he resides at the time of voting. The Constitution of the United States guarantees to him the right to vote for members of Congress. But unless he can vote for them in the ward where he resides, he cannot exercise this right at all. The inference then seems to be obvious, that of necessity he must vote for them in that ward. The meaning of the remaining portion of the first section cannot easily be mistaken. A voter who has resided six months in a legislative district of the City of Baltimore, and then moves into another legislative district cannot vote in this second district until he has resided therein for the space of six months; but in the meantime he is a legal voter in the district from which he removed.

Upon the whole we think that Owens' name was properly stricken from the list of voters; and that he has a right to be registered in the ninth precinct of the seventh ward.

(Filed 8th June, 1892.)