76 A.3d 1110

STATE BOARD OF ELECTIONS

v.

Clifford E. SNYDER, Jr., on behalf of
Carl Phillip SNYDER, his son

and

State Board of Elections

v.

Richard D. Boltuck, on behalf of Sarah
Elizabeth Boltuck, his daughter.

No. 122, Sept. Term, 2007.

Court of Appeals of Maryland.

Sept. 27, 2013.

**32**

Sandra B. Brantley, Asst. Atty. Gen. (Austin C. Schlik, Mark J. Davis, Assistant Attorneys General and Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Appellant.

Clifford E. Snyder, Jr. (Frederick, MD), on brief, Jonathan S. Shurberg (Silver Spring, MD), on brief, for Appellees.

Argued before HARRELL, BATTAGLIA, GREENE, BELL,* MURPHY,** ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

BELL, C.J. (Retired).

This case, consolidated actions brought by the appellees, Carl Snyder ("Snyder") and Sarah Boltuck ("Boltuck"), 17

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

year-olds, who would have been 18 by the 2008 general election, presents a narrow issue: whether under Maryland law, 17 year-olds who will turn 18 by close of registration for the general election and, thus, are eligible to vote in the partisan primary election preliminary to, and associated with, that election, may vote in non-partisan primary elections, in this case, for county school boards in Frederick and Montgomery counties, respectively. This issue has its genesis in *Lamone v. Capozzi*, 396 Md. 53, 912 A.2d 674 (2006). In that case, this Court held unconstitutional legislation that would have authorized early voting.[1] *Id.* 396 Md. at 93, 912 A.2d at 697. Critical to that legislation, in addition to permitting voting on more than one day as the Maryland Constitution prescribed, was a provision that permitted a voter to vote in a polling place other than his or her election ward or district. *Id.* at 64–65, 912 A.2d at 680–81.

Relevant to this case, we held that the latter provision conflicted with, and was therefore violative, of Article I, § 1 of the Maryland Constitution, which provides:

"All elections shall be by ballot. Except as provided in Section 3 of this article, every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State. A person once entitled to vote in any election district, shall be entitled to vote there until the person shall have acquired a residence in another election district or ward in this State."

---

1. In 2008, via a statewide referendum, Maryland voters amended Art. I, § 3 of the Maryland Constitution, thereby approving early voting. Article I, § 3(b) now provides, in relevant part:

"The General Assembly shall have the power to provide by suitable enactment a process to allow qualified voters to vote at polling places in or outside their election districts or wards or, during the two weeks immediately preceding an election, on no more than 10 other days prior to the dates specified in this Constitution."

See Act of May 17, 2007, ch. 513, 2007 Md. Laws 513.

**34**

Construing this provision, we stated, "It is clear from Article I, § 1, that a voter can only vote in the election ward or district in which he resides." *Capozzi*, 396 Md. at 84, 912 A.2d at 692. As the appellant, the Maryland State Board of Elections ("the appellant," "MSBE," or "Board") submits, we further explained that "[t]he phrase, 'shall be entitled to vote in the ward or election district in which he resides,' modifies the preceding phrase '[e]very citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election . . . .' The phrase, as a whole, designates who is allowed to vote, if they so choose." *Id.* at 85, 912 A.2d at 692.[2] We concluded:

> "The location at which a citizen can vote also is a requirement. Even under the strained interpretation that the appellants give the phrase, 'shall be entitled to vote in the ward or election district in which he resides,' the subsequent language of Article I, § 1 bars voting in an election district or ward that a person does not live in. Article I, § 1 states that a person shall be entitled to vote in the ward or election district where he resides until he acquires residence in another election district or ward. Therefore, once a voter who resides and votes in a particular ward acquires residence in another election district or ward, that voter's right, his or her entitlement, to vote in the ward where he or she once resided is extinguished. If he or she has the right to vote it is in the newly acquired district or ward."

*Id.*

The Court then rejected the State's alternative argument that the early voting statute was constitutional with respect to primary elections since those elections were not within the reach of Article I, § 1. *Id.* at 89, 912 A.2d at 695. We adopted the trial court's analysis and reasoned:

---

2. As we shall see, there was a context for these remarks and the State's argument that Article I, § 1 did not exclude voters once they qualified to vote in districts other than their own.

"[I]f Article I, § 1 were read to exclude primary elections, 'such a reading could lead to an absurd result, as it would eliminate *all* Constitutional qualifications for primary elections. Thus, a 12 year-old, non-U.S. citizen, residing in Virginia, would not be barred by the [Maryland] Constitution from voting in the Maryland primary election.' Such a reading simply cannot be correct."

*Id.* Thus, we held that "primary elections are included within the meaning of the phrase, 'at all elections to be held in this State' in Article I, § 1." *Id.*

Following our decision in *Capozzi,* the appellant asked the Attorney General for advice as to the effect of that decision on the right of persons under 18 to vote in primary elections. That course was dictated because, prior to December 2006, when the opinion was issued, the Board had construed Maryland Code (2003, 2004 Cum. Supp.) § 3–102 of the Election Law Article ("EL"),[3] which implements Article I, § 1, to

---

3. Md. Code (2003, 2004 Cum. Supp.) § 3–102 of the Election Law Article, which addresses voter registration qualifications provides:
 "(a) Except as provided in subsection (b) of this section, an individual may become registered to vote if the individual:
 "(1) is a citizen of the United States;
 "(2) is at least 18 years old or will be 18 years old on or before the day of the next succeeding general or special election;
 "(3) is a resident of the county as of the day the individual seeks to register; and
 "(4) registers pursuant to this title.
 "(b) An individual is not qualified to be a registered voter if the individual:
 "(1) has been convicted of theft or other infamous crime, unless the individual:
 "(i) has been pardoned; or
 "(ii) 1. in connection with the first conviction, has completed the court-ordered sentence imposed for the conviction, including probation, parole, community service, restitutions, and fines; or
 "2. in connection with a subsequent conviction, has completed the court-ordered sentence imposed for the conviction, including probation, parole, community service, restitution, and fines, and at least 3 years have elapsed since the completion of the court-ordered sentence imposed for the conviction, including probation, parole, community service, restitutions, and fines;
 "(2) is under guardianship for mental disability; or
 "(3) has been convicted of buying or selling votes.

permit 17 year-olds to vote in primary elections. This interpretation was based on the Board's understanding that Article I, § 1 applied only to general elections and did not apply to primary elections. Therefore, before *Capozzi*, after becoming a registered voter pursuant to EL § 3–102(a), an individual who would be 18 by the general election could vote in a primary election, even if not 18 by the date of the primary election.

The appellant reports that the Office of the Attorney General responded that "the inescapable consequence of this Court's interpretation of Article I, § 1 was that only individuals who will turn 18 before the next election (as opposed to the next general election) should be permitted to register." Subsequently, the Attorney General's Office of Opinions and Advice issued the advisory memorandum, "Age Requirement for Voting," which advised that, based on this Court's interpretation of Article I, § 1 in Capozzi, 17 year-olds who would be 18 by the next general election were prohibited from voting in primary elections. Still later, the Attorney General responded to an inquiry from a state senator regarding the decision of the two major political parties to allow 17 year-olds who would be 18 by the general election to vote in their primary.[4] Specifically, the senator inquired into how the decisions affected, if at all, the Attorney General's advice to the State Board on the matter of 17 year-olds voting in primary elections.

In his response, the Attorney General acknowledged the First Amendment associational rights of political parties to determine who will "participate in the 'basic function' of

---

"(c) Notwithstanding subsection (b) of this section, an individual is not qualified to be a registered voter if the individual has been convicted of a second or subsequent crime of violence, as defined in § 14–101 of the Criminal Law Article."
All future references to this Article are to Maryland Code (2003, 2007 Cum. Supp.).

**4.** In December 2007, the Maryland Democratic and Republican parties separately adopted resolutions allowing 17 year-olds to vote in their primary elections, and asked the Maryland State Board of Elections to honor the parties' subsequent rules for the upcoming February 12, 2008 election.

selecting the Party's candidates," *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216, 107 S.Ct. 544, 549, 93 L.Ed.2d 514, 524 (1986), and that, to burden those protected associational rights, there must be an overriding state interest. The Attorney General found no such state interest. Indeed, he found that EL § 3–102(a), as historically understood and applied by the State Board, "expressed a legislative policy in favor of permitting such voters to exercise the franchise in the primary"—a policy that coincides with the associational interest recently embraced by the parties. He concluded that neither Article I, § 1, nor *Capozzi* "indicates a specific state interest in excluding from primary elections those 17 year-olds who will be 18 by the time of the general election." Therefore, the Attorney General recommended that the State Board permit 17 year-olds to vote in partisan primaries, which he believed to be in accordance with EL § 3–102 and the First Amendment.

Consistent with the Attorney General's advice letter, the Board adopted the following policy:

"A 17 year old who is a Democrat or Republican may vote in a primary election. However, if the voter lives [in a county with non-partisan contests on the ballot], the voter must vote by provisional ballot so that the local board of elections can ensure that the voter did not cast any votes in the non-partisan contests. If a vote was cast in a non-partisan contest, this vote will not be counted, and only votes that the 17 year old is entitled to cast (i.e., partisan contests) will be counted."

After exhausting their administrative remedies, as required,[5] Snyder[6] and Boltuck[7] filed separate complaints in the

---

**5.** "As a prerequisite to judicial review we generally require that parties pursue and complete all administrative avenues of relief which the legislature has provided." *County Council of Prince George's County v. Billings*, 420 Md. 84, 99, 21 A.3d 1065, 1073 (2011).

**6.** Carl Snyder, who was 17 years-old, a resident of Frederick Count and otherwise eligible to vote, successfully registered to vote in that county as a Democrat. In response to the Board's post-*Capozzi* policy prohib-

Circuit Court for Anne Arundel County against the MSBE seeking "judicial relief" pursuant to Maryland Code (2003) § 12–202 of the Election Law Article.[8] Snyder alleged that

iting 17 year-olds to vote in primary elections, he petitioned the State Board for a declaratory judgment as to whether he was eligible vote in the upcoming Democratic Party primary. When the Board declined to issue a declaratory judgment, he asked the Frederick County Board of Elections ("FCBE") for a determination. On December 12, 2007, the FCBE responded to Snyder's letter, advising him that he was ineligible to vote in the Democratic Party primary.

Thereafter, Snyder filed two administrative complaints with the MSBE. The first challenged the FCBE's determination that he was not eligible to vote in the upcoming primary elections. The complaint was dismissed as moot in view of the State Board's December 20, 2007 resolution that changed the Board's post-*Capozzi* policy to allow persons who would turn 18 before the November general election to participate in the upcoming partisan primary election. His second complaint challenged both the Board's changed policy of permitting 17 year-olds to vote in a partisan primary election but not a non-partisan one, and its policy of requiring those 17 year-olds to vote by provisional ballot in counties in which there were non-partisan elections on the ballot. The MSBE dismissed this second complaint for failure to allege an Election Law Article violation.

7. Seventeen year-old Sarah Boltuck a resident of Montgomery County, applied for but was denied voter registration in 2007. In a letter dated June 11, 2007, the Montgomery County Board of Elections ("MCBOE") explained that it denied her voter registration because she would not be 18 years-old by the February 2008 elections. Having confirmed from the MSBE's website that she needed to be 18 years-old before the primary elections in order to vote in the primary election, she emailed the MCBOE on June 13, 2007, challenging that interpretation. When the response remained the same, Boltuck sent a second email to the MCBOE on June 15, 2007, citing EL § 3–102 and demanding that the MCBOE approve her registration application. On June 26, 2007, the MCBOE responded to Boltuck by email and attached a memorandum from the Maryland Assistant Attorney General to the MSBE explaining why she was ineligible to vote despite the contrary statuary law. Subsequently, by a letter dated January 11, 2008, the MSBE informed Boltuck that she was eligible to vote by provisional ballot in the upcoming partisan Presidential primary election; however, the MSBE's website indicated that Boltuck was not eligible to vote in her county's concurrent non-partisan Board of Education primary election.

8. Snyder asserted subject matter jurisdiction pursuant to Maryland Code (2003, 2007 Cum. Supp.) § 12–202 of the Election Law Article, which provides, in relevant part:

"(a) If no other timely and adequate remedy is provided by this article, a registered voter may seek judicial relief from any act or

the MSBE violated several provisions of the Election Law Article, including §§ 3–102, 3–501,[9] and 8–802,[10] when it determined that he was ineligible to vote in the upcoming non-partisan elections. Snyder additionally alleged that the MSBE's administrative actions violated Article I, § 1 of the

___

omission relating to an election, whether or not the election has been held, on the grounds that the act or omission:

"(1) is inconsistent with this article or other law applicable to the elections process; and

"(2) may change or has changed the outcome of the election."

9. EL § 3–501, which addresses the removal of voters from registry, provides: "An election director may remove a voter from the statewide voter registration list only:

"(1) at the request of the voter, provided the request is:

"(i) signed by the voter;

"(ii) authenticated by the election director; and

"(iii) in a format acceptable to the State Board or on a cancellation notice provided by the voter on a voter registration application;

"(2) upon determining, based on information provided pursuant to § 3–504 of this subtitle, that the voter is no longer eligible because:

"(i) the voter is not qualified to be a registered voter as provided in § 3–102(b) of this title; or

"(ii) the voter is deceased;

"(3) if the voter has moved outside the State, as determined by conducting the procedures established in § 3–502 of this subtitle; or

"(4) if, in accordance with the administrative complaint process under § 3–602 of this title, the State Administrator or the State Administrator's designee has determined that the voter is not qualified to be registered to vote.

10. EL § 8–802 addresses non-partisan elections. It provides: "(a)(1)(i) Members of boards of education shall be elected on a nonpartisan basis.

"(ii) In a primary election to nominate board of education candidates, any registered voter of the county, regardless of party affiliation or lack of party affiliation, is eligible to vote in those contests for nomination.

"(2) Candidates for election to boards of education shall, without party designation or regard to party affiliation:

"(i) file certificates of candidacy;

"(ii) be certified to the ballot;

"(iii) appear on the ballot;

"(iv) be voted on; and

"(v) be nominated and elected.

"(b) This section does not apply to candidates for nomination or election to a board of education if Title 3 of the Education Article requires a partisan election."

Constitution of Maryland, and Articles 8 [11] and 24 [12] of the Maryland Declaration of Rights. He requested an injunction to require the MSBE to allow him to vote by regular ballot, and to have his votes counted in the usual way in all contests on Frederick County's February 2008 ballot.[13] Boltuck filed her action on January 18, 2008. The action mirrored Snyder's complaint by seeking relief pursuant to EL § 12–202, and alleging that the MSBE violated several provisions of the Election Law Article. The Snyder and Boltuck complaints were then consolidated.

At the hearing, the MSBE argued that the Circuit Court should dismiss both complaints or, in the alternative, provide favorable summary disposition. It reasoned that Article I, § 1 of the Maryland Constitution, as interpreted by *Capozzi*, prohibited persons under the age of 18 from voting in nonpartisan primary elections, even if they turn 18 before the subsequent general election.

The Circuit Court denied the MSBE's motion for summary judgment, granted the appellees' cross motion in part and, pursuant to the appellees' oral motion to amend, issued the following declaratory judgment:

"[A]ll 17 year old voters, whether or not affiliated with any political party, who will be 18 on or before the November 4, 2008 general election, shall be entitled to vote in both the

---

**11.** Md. Dec. of R. art. 8. provides:

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

**12.** Md. Dec. of R. art. 2. provides:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

**13.** Following the Circuit Court hearing, the appellees chose not to pursue their challenge to the provisional ballots policies, although, as we shall see, this Court addressed the Board's position with respect to the use of such ballots.

partisan and nonpartisan primary elections on February 12, 2008, and it is further ORDERED that Defendant State Board of Elections may use provisional ballots in the February 12, 2008 primary elections for all 17 year old voters, whether or not affiliated with any political party, who will be 18 on or before the November 4, 2008 general election."

With respect to the issue this case presents, the eligibility of 17 year-olds to vote in non-partisan primary elections, the Circuit Court concluded that "the voter eligibility requirements of Article I, § 1 of the Maryland Constitution do not apply to non-partisan elections for Boards of Education, municipal elections, and local ballot questions that are not mandated by the Constitution." It found support for that interpretation of Article I, § 1 in *Hanna v. Young*, 84 Md. 179, 183, 35 A. 674, 675 (1896). There, this Court stated, "It is only at elections which the constitution itself requires to be held, or which the legislature, under the mandate of the constitution, makes provision, that persons having the qualifications set forth in said Article 1, § 1 are by constitution of the state declared to be qualified electors." *Id.* The Circuit Court concluded from this statement that Article I, § 1 and *Capozzi*'s interpretation of it, were inapposite to this case and did not preclude registered 17 year-old voters from participating in a non-partisan primary election under EL § 3–102.

Pursuant to EL § 12–203(a)(3),[14] the MSBE noted its appeal of the Circuit Court's judgment. We subsequently exercised direct appellate jurisdiction to consider whether 17 year-old persons, who will be 18 at the time of the general election, are eligible to vote in the non-partisan primaries preceding that

---

**14.** EL § 12–203 provides:

 "(a) In general.—A proceeding under this subtitle shall be conducted in accordance with the Maryland Rules, except that:

 "(1) the proceeding shall be heard and decided without a jury and as expeditiously as the circumstances require;

 "(2) on the request of a party or sua sponte, the chief administrative judge of the circuit court may assign the case to a three-judge panel of circuit court judges; and

 "(3) an appeal shall be taken directly to the Court of Appeals within 5 days of the date of the decision of the circuit court."

election.[15] On February 8, 2008, following oral argument, we answered that question in the affirmative and issued a per curiam order, with opinion to follow, vacating the order of the Circuit Court and remanding the case to that court, "with directions to enter a new Order and Declaratory Judgment not inconsistent with the following determinations:

"1. The provisions of Article I, Section 1 of the Maryland Constitution apply to primary elections conducted in Maryland.

"2. The foregoing notwithstanding, the voter eligibility provisions of Article I, Section I are not in conflict with the age provisions of Md. Code, Election Law Article, Section 3–102. Article I, Section I does not operate to prohibit The General Assembly from establishing the age provisions in Section 3–102.

"3. All 17–year–old registered voters who will be 18 on or before the November 4, 2008 general election, shall be entitled to vote in the primary elections to be held on February 12, 2008, including non-partisan elections for county boards of education.

"4. The foregoing notwithstanding, such 17-year-old voters may not vote in any special or municipal election conducted concurrent with the February 12, 2008 primary election.

"5. The State Board of Elections may use provisional ballots in the February 12, 2008 primary elections for all 17-year-old voters who will be 18 on or before the November 4, 2008 general election; and it is further

"ORDERED, that the judgment be entered on the respective motions for summary judgment consistent with the above declarations. Mandate to issue forthwith."

---

**15.** While the Court was considering the present case, Allen R. Dyer, a candidate in the non-partisan election for the Board of Education of Howard County, and Howard County resident Cynthia L. Vaillancourt, on behalf of her 17 year-old daughter, Katherine Ann Vaillancourt, filed a motion in this Court to intervene in order to file a motion to dismiss the MSBE's appeal. We denied the motion.

*State Bd. of Elections v. Snyder*, 403 Md. 172, 172–73, 941 A.2d 467 (2008). We now provide the reasons for our decision and order.

Article III, § 49 of the Constitution provides:

"The General Assembly shall have the power to regulate by Law, not inconsistent with this Constitution, all matters which relate to the Judges of election, time, place and manner of holding elections in this State, and of making returns thereof."

Pursuant to this mandate,[16] the General Assembly promulgated the State election law, *see County Council for Montgomery County v. Montgomery Ass'n, Inc.*, 274 Md. 52, 60, 333 A.2d 596, 601 (1975), now codified as the Election Law Article. The Election Law Article expressly applies to all elections, general, primary, and special, and "unless otherwise specifically provided in this article," excludes municipal elections except those in Baltimore City.[17] The provisions governing general, primary, and special elections are enumerated, and explicated, in Title 8, in Subtitles 2, 3, and 4, respectively. Also included in Title 8, in Subtitle 8, albeit exempted from some of the requirements pertaining to the other covered elections,[18] are the provisions that apply to, and govern, Board of Education elections. With the exception of ten counties and Baltimore City, county school boards are elected in countywide elections as provided in the State Code. *See* § 3–114 of the Education

16. Md. Const. art. I, § 7 provides another mandate:
 "The General Assembly shall pass Laws necessary for the preservation of the purity of Elections."

17. EL § 1–101(v) provides:
 "(1) 'Election' means the process by which voters cast votes on one or more contests under the laws of this State or the United States.
 "(2) 'Election' includes, unless otherwise specifically provided in this article, all general elections, primary elections, and special elections.
 "(3) "Election' does not include, unless otherwise specifically provided in this article, a municipal election other than in Baltimore City."

18. Pursuant to Md. Const. art. XVII, § 7, "Sections 1, 2, 3, and 5 of this Article do not apply or refer to ... members of any elective local board of education."

Article (1978, 2008 Repl. Vol.). Significantly, although there are provisions in Title 8 pertaining to the presidential election, Subtitles 5 and 5A, the Senate elections, Title 6, and the Congressional elections, Title 7, there are no provisions for any other election.

With regard to Board of Education elections, EL § 8–802 makes clear that, unless the Education Article "requires a partisan election," subsection (b), such elections are non-partisan, making, "[i]n a primary election to nominate board of education candidates, any registered voter of the county, regardless of party affiliation or lack of party affiliation, . . . eligible to vote in those contests for nomination." Subsection (a). It also defines what constitutes a non-partisan election:

"(2) Candidates for election to boards of education shall, without party designation or regard to party affiliation:

"(i) file certificates of candidacy;

"(ii) be certified to the ballot;

"(iii) appear on the ballot; be voted on; and

"(iv) be nominated and elected."

As § 8–802 indicates, there is a nominations process, in the form of a primary election, for Board of Education candidates. Section 8–804 prescribes that process:

"Nomination

"(a) In each year that one or more members of a board of education are to be elected, candidates shall be nominated at the primary election.

"Candidate who dies or is disqualified before primary

"(b)(1) If a candidate dies or becomes disqualified before the ballots are printed, or at a time when the ballots can be reprinted, the name of the candidate may not appear on the ballot.

"(2) If a candidate dies or becomes disqualified after the ballots are printed and too late for the ballot to be reprinted, any votes cast for that candidate may not be counted.

"Determination of nomination

"(c)(1) The candidates, equal in number to twice the number of offices to be filled, who receive the largest number of votes in the primary election shall be the nominated candidates.

"(2) If two or more candidates each receive the lowest number of votes necessary to qualify for nomination, creating a tie for the last nomination for the office to be filled, each shall be a nominated candidate."

Section 8–806 addresses the general election of Board of Education members:

"Number of votes in a contest

"(a) In a general election for board of education members, a voter may vote for a number of nominees equal to the number of members to be elected.

"Elections results

"(b)(1) The nominees, equal in number to the number of offices to be filled, who receive the largest number of votes in a general election shall be declared elected.

"(2)(i) If two or more nominees each receive the lowest number of votes necessary to qualify for election, creating a tie for the last office to be filled, the office shall be considered vacant.

"(ii) A vacancy occurring under subparagraph (i) of this paragraph shall be filled:

"1. as if the vacancy occurred during the term of office for which the election is being held; and

"2. by the selection of one of the nominees who ties in the general election."

As we have seen, EL § 3–102 implements Article I, § 1 of the Constitution. We have stated the purpose of that Constitutional provision as being to prescribe "who may vote, where he or she may vote, and the qualifications for doing so." *Capozzi*, 396 Md. at 59, 912 A.2d at 677. In implementing this provision, § 3–102 provides:

"(a) Except as provided in subsection (b) of this section, an individual may become registered to vote if the individual:

"(1) is a citizen of the United States;

"(2) is at least 18 years old or will be 18 years old on or before the day of the next succeeding general or special election;

"(3) is a resident of the State as of the day the individual seeks to register; and

"(4) registers pursuant to this title."

"(b) An individual is not qualified to be a registered voter if the individual:

"(1) has been convicted of a felony and is actually serving a court-ordered sentence of imprisonment, including any term of parole or probation, for the conviction;

"(2) is under guardianship for mental disability; or

"(3) has been convicted of buying or selling votes."

It thus expressly states that a person not yet 18, but who will be 18 by the time of the general election is eligible to vote in the primary election to which that general election relates.[19]

The Board does not deny that § 3–102 permits 17 year olds to vote in primary elections, without differentiating between partisan and non-partisan primary elections, if they would be 18 at the time of the general election. Indeed, before *Capozzi*, it believed that provision to be a correct statement of the law and entirely consistent with both the letter and spirit of Article I, § 1. After *Capozzi*, arguing that Article I, § 1 only provides for the right to vote for persons 18 years of age or older, it submits that EL § 3–102 conflicts with that provision and, therefore, is unenforceable, that the constitutional provision necessarily prevails, effectively prohibiting 17 year-olds from voting in nonpartisan elections.

---

**19.** Section 3–102 was amended by Acts of 2010, ch. 8, § 1, to more clearly state this provision. Section 3–102 (2003, 2010 Repl. Vol.) provides:

"(2) Notwithstanding paragraph (1)(ii) of this subsection, an individual under the age of 18 years:

"(i) may vote in a primary election in which candidates are nominated for a general or special election that will occur when the individual is at least 18 years old; and

"(ii) may not vote in any other election."

The appellant also argues that the Circuit Court erred in relying on *Hanna v. Young,* 84 Md. 179, 35 A. 674 (1896), to conclude that Art. I, § 1 of the Maryland Constitution does not apply to, and thus does not regulate, non-partisan primary elections for "County School Board." First, it submits, that the Circuit Court's reading of *Hanna* conflicts with *Capozzi,* which expressly determined that primary elections are included within the class of "all elections," as used in Article I, § 1, to which that provision applies, and others of our cases, namely *Reeder v. Board of Supervisors of Elections of Queen Anne's County,* 269 Md. 261, 305 A.2d 132 (1973); *Nader for President 2004 v. Maryland State Board of Elections,* 399 Md. 681, 926 A.2d 199 (2007); *Maryland Green Party v. Maryland Board of Elections,* 377 Md. 127, 832 A.2d 214 (2003). In any event, the Board asserts, the holding reflected in the sentence on which the Circuit Court relies—"It is only at elections which the constitution itself requires to be held, or which the legislature, under the mandate of the constitution, makes provision, that persons having the qualifications set forth in said section 1, art. I, are by the constitution of the state declared to be qualified electors"—aside from being dicta, is overbroad, "a broad carve-out from the voter eligibility requirements of Article I, § 1."

The appellees take the opposite position. They argue, as the Circuit Court found, that the sentence from *Hanna*[20] that the Circuit Court determined to be dispositive precludes the application of constitutional requirements to the primary elections at-issue. They thus agree with the Circuit Court that

---

**20.** When *Hanna v. Young,* 84 Md. 179, 35 A. 674 (1896), was decided, Article I, § 1 provided:

"All elections shall be by ballot; and every male citizen of the United States, of the age of twenty-one years, or upwards, who has been a resident of the state for one year, and of the legislative district of Baltimore city, or of the county, in which he may offer to vote, for six months next preceding the election, shall be entitled to vote, in the ward or election district, in which he resides, at all elections hereafter to be held in this state."

It since has been amended, to its present text, to accommodate among other things the 26th Amendment to the United states Constitution, ratified April 8, 1971, giving the right to vote to 18 year-olds.

the Maryland Constitution's election requirements do not apply to the non-partisan primary elections at issue here, as they are neither required by the Constitution nor otherwise the direct product of Constitutional mandate.

Whether, or not, the Circuit Court correctly interpreted and applied *Hanna*, however, the appellees believe the result it reached was correct. The appellees' argument proceeds from the simple proposition that Article I, § 1 does not expressly prohibit persons who are not 18 from having the right to vote, rather, that it merely guarantees the right to vote to individuals who will be 18 by the time of the next election. That "permits the General Assembly to expand voter qualifications when it has a rational basis to do so, as indisputably exists here." The appellees further argue that EL § 3–102 does not conflict with Article I, § 1 or any other provision of the Maryland Constitution.[21]

■ We disagree with the appellees' construction of *Hanna* as it relates to, and impacts, primary elections for State or county offices. *Hanna* fully applies, and is dispositive with regard, to municipal elections. The appellant is correct, the statement upon which the Circuit Court and the appellees heavily rely is dictum. The issue in *Hanna* was whether the Maryland Constitution applied to municipal elections. In the 111 years since *Hanna* was decided, we have only cited *Hanna* in four cases, and then only for the proposition that constitutional requirements for elections do not apply to municipal elections. *See Citizens Against Slots v. PPE Casino Resorts,* 429 Md. 176, 186 n. 7, 55 A.3d 496, 502 n. 7 (2012) (observing that municipal elections generally fall outside the scope of Article I); *Hill v. Colmar Manor,* 210 Md. 46, 53, 122 A.2d 462, 466 (1956) (same); *Jackson v. Norris,* 173 Md. 579,

---

21. The parties agree that the case *sub judice* does not concern partisan primary elections. This is so, in part, because the Democratic and Republican parties have both agreed to permit 17 year-olds to vote in partisan primary elections if they are 18 by the time of the next general election.

602, 195 A. 576, 587 (1937) (same); *Johnson v. Luers,* 129 Md. 521, 531–532, 99 A. 710, 713 (1916) (same).[22]

Again, the only issue in *Hanna* was whether the State constitutional voter requirements, as set forth in Article I, § 1 of the Maryland Constitution, applied to a municipal election for the Town Commissioner of Bel Air, Maryland. *See Hanna,* 84 Md. at 180–81, 35 A. at 674–75. We observed that the election requirements contained in Article I § 1 at that time did not refer to any municipalities other than Baltimore City. *Id.* at 182–83, 35 A. at 676. In considering the role of municipalities in the State government, we explained:

> "The constitution of this state provides for the creation of certain offices, state and county, which are filled either by election or by appointment; and we regard it as an unreasonable inference to suppose that municipal elections held within the state (outside the corporate limits of Baltimore city) can be properly termed elections, under the constitution, such as state and county elections; or that the framers of the constitution ever contemplated that [Article 1, § 1], of that instrument was intended to apply to municipal elections, such as the one now under consideration, which is the mere creature of statutory enactment. In the creation of a new municipality, the constitution devolves upon the general assembly the entire duty of giving vitality to and of organizing and fostering the body corporate without any other constitutional regulation than the mandate to provide for the system itself. It is therefore the mere creature of legislative sanction, and the subject of statutory regulation."

*Id.* at 183, 35 A. at 675. We reasoned that the office of "Town Commissioner" was a municipal office that was not subject to the requirements of Article I, § 1 of the Constitution because it was not selected by "county or state election," not "clothed with power" of the State, and not "designated as any part of our State government." *Id.* at 183, 35 A. at 675. The position

---

22. The Attorney General has also relied on *Hanna* in support of Article I, § 1's inapplicability to municipal elections. 61 Md. Op. Att'y Gen. 254, 275–276 (1976); 55 Md. Op. Att'y Gen. 84, 84–85 (1970).

of Town Commissioner was, in reality, a municipal office chosen by municipal election.[23] We concluded that, because municipal elections, as distinct from State and county elections, are not subject to the requirements of Article I, § 1, the election for town commissioner was not subject to the requirements of Article I, § 1. *Id.*

The present case, of course, does not involve a municipal election or municipal office. Unlike the municipal position of "Town Commissioner," at issue in *Hanna,* the issue here concerns a primary election to nominate persons for membership on the County School Boards of Frederick and Montgomery counties. County school boards, while local in some respects, are not municipal offices. They were established by the General Assembly in 1868, pursuant to the mandate of Article VIII, § 1 of the 1864 Constitution, by ch. 407 of the Acts of 1868,[24] *Chesapeake Charter, Inc. v. Anne Arundel Cnty. Bd. of Educ.,* 358 Md. 129, 136, 747 A.2d 625, 629 (2000), and, since, have been consistently regarded as State agencies, *Bldg. Materials Corp. of Am. v. Bd. of Educ.,* 428 Md. 572, 576, 53 A.3d 347, 350 (2012), notwithstanding that "in terms of their composition, jurisdiction, funding, and focus, they clearly have a local flavor." *Chesapeake Charter,* 358 Md. at 136–37, 747 A.2d at 629. In *Chesapeake Charter,* we explained:

---

**23.** In rejecting the appellant's argument that the State Constitution applied to municipal elections, the *Hanna* Court noted that Article 1, § 1 did not refer to municipalities, with Baltimore City being the lone exception. *See Hanna v. Young,* 84 Md. 179, 182, 35 A. 674, 675 (1896). The Court then cited our earlier case, *Smith v. Stephan,* 66 Md. 381, 7 A. 561 (1887), for the proposition that "no municipal elections, except those held in the city of Baltimore, are within the terms or meaning of the constitution." The Court reasoned that our earlier holding in *Smith* was in accord with its interpretation of Article I, § 1 as not applying to municipal elections other than Baltimore City. *See Hanna,* 84 Md. at 182–83, 35 A. at 675.

**24.** Article VIII § 1 of the Constitution provides:
"The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance."
Pursuant to that constitutional mandate, the General Assembly established 24 county school boards.

"County school boards are considered generally to be State agencies because (1) the public school system in Maryland is a comprehensive State-wide system, created by the General Assembly in conformance with the mandate in Article VIII, § 1 of the Maryland Constitution to establish throughout the State a thorough and efficient system of free public schools, (2) the county boards were created by the General Assembly as an integral part of that State system, (3) their mission is therefore to carry out a State, not a county, function, and (4) they are subject to extensive supervision by the State Board of Education in virtually every aspect of their operations that affects educational policy or the administration of the public schools in the county.[25] Although

---

**25.** It was in this context that we discussed the hierarchy of Maryland's education system in *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, noting that "[t]he authority of the State Board of Education ... has been described as 'a visitatorial power of the most comprehensive character,' one that is 'in its nature, summary and exclusive[.]' " 358 Md. at 137–38, 747 A.2d at 629–630 (quoting *Wiley v. Allegany County School Comm'rs*, 51 Md. 401, 405–06 (1879)). We laid out the relationship between the State Board and the county boards:

"The State government structure for primary and secondary education is the State Department of Education, created by [Education Article] § 2–201 'as a principal department of the State government.' The Department consists of (1) the State Board of Education, which is the head of the Department [ (Education Article] § 2–102) ..., (2) the State Superintendent of Schools, who is a member of the Governor's Executive Council [ (Education Article] § 2–303(d)) and serves, in essence, as the chief executive officer of the Department, and (3) the other professional, administrative, and clerical employees employed by the Department, who are State government employees for budgetary and personnel purposes.

⁎ ⁎ ⁎

"For each county, the [General Assembly] has created a county department of education that, in structure, generally mirrors that of the State Department of Education. The county school board is the head of the county department and is responsible for administering, in the county, the supervening State policy determined by the State Board of Education, in accordance with State Board's directives. There is, as well, a county superintendent, who is the executive officer of the county board and, in essence, the chief executive office of the county department."

*Chesapeake Charter, Inc.*, 358 Md. at 137–38, 747 A.2d at 629–30.

legally State agencies for those reasons, they are not normally regarded, for structural or budgetary purposes, as units within the Executive Branch of the State government."

358 Md. at 136–37, 747 A.2d at 629. We conclude that the Circuit Court erred in finding that our decision in *Hanna v. Young*, 84 Md. 179, 35 A. 674 (1896), precludes the application of Article I, § 1 to the school board primary election at issue in this case.

Also unlike the election at issue in *Hanna*, the selection process at issue in the present case is a primary election. *See* EL § 8–804. As the appellant has pointed out and emphasized, we have recently held that the election requirements contained in Article I, § 1 apply to all primary elections in the State of Maryland. *See Capozzi*, 396 Md. at 89, 912 A.2d at 695 (holding "all elections to be held in this State" as used in Article I, § 1, applies to all primary elections). In that case, the State contended that early voting was permissible in undifferentiated primary elections because of the Legislature's plenary authority to regulate primary elections. *See id.* at 88, 912 A.2d at 694. As pointed out, we rejected that argument and held that "primary elections are included within the meaning of 'all elections to be held in the State' in Article I, § 1.'" *Id.* at 89, 912 A.2d at 695 (quoting Article I, § 1). We made that statement without qualification. Since EL § 8–804(a) provides that members of the County School Board shall be nominated by *primary* election and § 3–102 permits a 17 year-old to vote in a related primary, provided he or she will be 18 when the general election occurs, it follows that, unless *Capozzi* dictates the result the appellant advocates, Art I, § 1 applies to those non-partisan primary elections and, thus, the election at-issue in the present case, just as it applies to partisan primary and general elections in the State of Maryland.

We turn, therefore, to the remaining question this appeal presents: whether Article I, § 1 of the Maryland Constitution precludes enforcement of § 3–102(a) of the Election Law Article, which, by its terms ("an individual under the age of 18

years ... may vote in a primary election in which candidates are nominated for a general or special election that will occur when the individual is at least 18 years old") permits 17 year-olds to register to vote in non-partisan primary elections if they will be 18 years-old by the next general election. Stated differently, the question is whether *Capozzi* requires the conclusion drawn by the appellant that § 3–102(a) is in conflict with Article I § 1.

▮ Resolving this conflict is a matter of constitutional construction or interpretation. Our task in matters requiring constitutional interpretation is to discern and then give effect to the intent of the instrument's drafters and the public that adopted it. *Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 8–9, 650 A.2d 705, 708 (1994). *See Bernstein v. State,* 422 Md. 36, 43–44, 29 A.3d 267, 271 (2011) (citing *Buchholtz v. Hill,* 178 Md. 280, 285–86, 13 A.2d 348, 351 (1940)) (recognizing that, because the Constitution was carefully written by its drafters, solemnly adopted by the constitutional convention, and approved by the people of Maryland, courts lack the discretion to freely depart from the plain language of the instrument). In that regard, we stated in *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980):

> "[I]t is axiomatic that the words used in the enactment should be given the construction that effectuates the intent of its framers ... such intent is first sought from the terminology used in the provision, with each word being given its ordinary and popularly understood meaning ... and, if the words are not ambiguous, the inquiry is terminated...."

287 Md. at 277–78, 412 A.2d at 398–99. In approaching and performing this task, we look to the natural and ordinary meaning of the provision's language. *See Roskelly v. Lamone,* 396 Md. 27, 48, 912 A.2d 658, 671 (2006). Where the provision at issue is clear and unambiguous, the Court will not infer the meaning from sources outside of the Constitution itself. *See Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005); *see also Adamson v. Correctional Medical Services,*

*Inc.,* 359 Md. 238, 251, 753 A.2d 501, 508 (2000) (observing that when the language of a legal provision is clear or unambiguous our interpretative inquiry ends).

When a constitutional provision is ambiguous or otherwise unclear, we approach its interpretation the same way that we interpret statutory language, and we generally apply the same principles. *See Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 81 (2004) ("When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language."). That approach was described in *Johns Hopkins University v. Williams,* 199 Md. 382, 86 A.2d 892 (1952):

> "[C]ourts may consider the mischief at which the provision was aimed, the remedy, the temper and spirit of the people at the time it was framed, the common usage well known to the people, and the history of the growth or evolution of the particular provision under consideration. In aid of an inquiry into the true meaning of the language used, weight may also be given to long continued contemporaneous construction by officials charged with the administration of the government, and especially by the Legislature."

*Id.* at 386–87, 86 A.2d at 894. Because discerning and giving effect to the intent of the provision is the goal, interpretive results that are illogical or inconsistent with common sense should be avoided whenever possible, consistent with the statutory language. *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279 (1975). We have also observed, in that regard, that statutory laws regarding the same subject are to be read and harmonized together in order to avoid leaving the provision at issue ineffective, duplicative, or nugatory. *See Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 302, 783 A.2d 667, 671 (2001). For this reason, where a statutory provision is a part of a statutory scheme, that provision will be interpreted within the context of that statutory scheme. *Fitzpatrick,* 366 Md. at 302, 783 A.2d at 671 (citing *Government Employees Ins. Co. v. Insurance Comm'r,* 332 Md. 124, 131–132, 630 A.2d 713, 717–18 (1993)).

■ In construing a constitution, we have stated "that a constitution is to be interpreted by the spirit which vivifies, and not b[y] the letter which killeth." *Bernstein v. State,* 422 Md. 36, 56, 29 A.3d 267, 279 (2011) (quoting *Benson v. State,* 389 Md. 615, 632, 887 A.2d 525, 535 (2005), in turn citing *Buchholtz v. Hill,* 178 Md. 280, 286, 13 A.2d 348, 351 (1940)). We similarly do not read the Constitution as a series of independent parts. *See County Comm'rs for Montgomery County v. Supervisors of Elections,* 192 Md. 196, 208, 63 A.2d 735, 740 (1949). Just as a statute is read in the context of a regulatory scheme, this Court construes constitutional provisions as part of the Constitution as a whole. *See State v. Jarrett,* 17 Md. 309, 328 (1861) ("[i]n construing a Constitution, it must be taken as a whole, and every part of it, as far as possible, interpreted in reference to the general and prevailing principle.").

With these guiding principles in mind, we turn first to the determination of whether Article I, § 1 is clear or ambiguous. The second sentence of that provision pertaining to the age requirement is the key to that inquiry. It provides, as we have seen:

"Except as provided in Section 3 of this article, every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State"

Article I, § 1.

We read that sentence as providing that individuals who reside in Maryland and *will be* 18 years-old by the close of registration next preceding "the election," have the right to vote in "all elections" in Maryland.[26] The present case therefore turns upon whether the term, "the election," as used in the phrase, "as of the time for the closing of registration next

---

**26.** As noted above, "all elections," as it appears in Article I, § 1 of the Maryland Constitution, does not include municipal elections outside of Baltimore City.

preceding the election," is restricted to a general election—
County, State, or Federal—or refers also to the primary
election that precedes and informs it. If the term, "election,"
in that phrase refers to "primary elections," then the appellant
is correct, the appellees would not be entitled to vote because
they would not be 18 by the time of the primary election. On
the other hand, if "the election" refers to the "general elec-
tion," then the appellees would be entitled to vote in all
primary elections because they would be 18 before the close of
the registration preceding the general election.

The appellant reads *Lamone v. Capozzi*, 396 Md. 53, 912
A.2d 674 (2006), as interpreting the above language to include
the age restriction for voting and, thus, to prohibit persons
who are not yet 18 from voting in primary elections. We said
on the matter in *Capozzi:*

"We adopt the analysis offered by the Circuit Court in
holding that primary elections are included within the mean-
ing of 'at all elections to be held in this State' in Article I,
§ 1: if Article I, § 1 were read to exclude primary elections,
'such a reading could lead to an absurd result, as it would
eliminate all Constitutional qualifications for primary elec-
tions. Thus, a 12 year-old, non-U.S. citizen, residing in
Virginia, would not be barred by the [Maryland] Constitu-
tion from voting in the Maryland primary election.' Such a
reading simply cannot be correct."

*Id.* at 89, 912 A.2d at 695. Pointing specifically to our
statements in *Capozzi*, the appellant concludes that the appel-
lees would not be 18 by the primary election, and are there-
fore prohibited from voting in that election.

Contrary to the appellant's view, we conclude that *Capozzi*
is inapposite to the disposition of this case. First, as the
appellees point out, "*Capozzi* dealt solely with early voting. It
did not address in any fashion the question of eligibility to
vote based on age, and it did not in any manner address the
interpretation of § 3–102 of the Election Code." [27] It is, of

---

27. To drive this point home, the appellees noted the Court's reliance on
 Article III § 49, which gave the General Assembly "the power to

course, significant, to this point, that it was the phrase, "shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State," of the second sentence to which the *Capozzi* Court referred, not the phrase, "who is a resident of the State as of the time for the closing of registration next preceding the election." Second, the sentence's syntax and use of the definite article in the term "the election" suggest that "election" in the phrase "as of the time for the closing of registration next preceding the election" is not synonymous with "all elections," as used in the phrase "at all elections to be held in this State."

The latter term, "all elections," clearly refers to any election and was the quoted textual basis for the *Capozzi* Court's holding. *See id.* If the two terms "the election" and "all elections" were interchangeable, as the appellant uses *Capozzi* to argue, the second phrase of the second sentence of Article I, § 1 would be nugatory.[28] *See Whiting–Turner Contracting*

---

regulate by Law, not inconsistent with this Constitution, all matters which relate to the Judges of election, time, place, and manner of holding elections in this State, and of making returns thereof," and the absence of a similar provision explicitly restricting its power to determine voter eligibility. In that regard, they argue:

"... [T]o the contrary, there is an explicit statutory command (§ 3–102) that voters who will be 18 prior to the general election shall be eligible to vote in the preceding primary election, notwithstanding the fact that such a voter will not be 18 at the time of the primary. "Appellee[s] submit[ ] that this critical distinction, between 'time, place and manner' restrictions on voting, which were undoubtedly the subject of *Capozzi,* and voter eligibility restrictions, which were not in any way at issue in *Capozzi,* mandate that *Capozzi* has no controlling authority on the issues presented in this case."

28. In *Thomas v. Police Commissioner,* 211 Md. 357, 127 A.2d 625 (1956), we stated:

"It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. A corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory."

211 Md. at 361, 127 A.2d at 627 (internal citations omitted).

*Co. v. Fitzpatrick,* 366 Md. 295, 302, 783 A.2d 667, 671 (2001) ("[W]henever possible, the statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory."). It would also effectively eviscerate the difference between a primary election and a general election, a difference that the General Assembly took some pains to establish. *See* EL §§ 8–201, et seq. and 8–301, et seq. and §§ 8–804 and 8–806. The sentence would read as providing that every citizen who is 18 and a resident of the state at the close of registration before *all* elections shall be entitled to vote in *all* elections. That, in turn, would raise additional questions regarding the application of Article I, § 1, *e.g.,* what exactly "the close of registration next preceding all elections" means, and produce an unacceptable result under our precedents. *See id.* at 302, 783 A.2d at 671 ("[A] statute is to be given a reasonable interpretation, not one that is illogical or incompatible with common sense."). We therefore conclude that *Capozzi* is inapposite to the question in the present case.

We also conclude that the term "the election" in the phrase "as of the time for the closing of registration next preceding the election" refers to the next county, state, federal, or other "general election," and not to the next primary election. Primary elections are, as the relevant statutes make clear, nominating procedures by which the candidates in the general election are selected. *See State Administrative Board of Election Laws v. Calvert,* 272 Md. 659, 676, 327 A.2d 290, 299 (1974). Such procedures were not in use in Maryland, or in the rest of the country, for that matter, when the Constitution of 1867 was adopted. *See id.* ("A primary election is merely an officially supervised party nominating procedure. It appears to have been unknown in Maryland prior to the first decade of this century.") (citing *Hennegan v. Geartner,* 186 Md. 551, 554, 47 A.2d 393, 394 (1946)); *see also* Sean M. Ramaley, *Is the Bell Tolling: Will the Death of the Partisan Blanket Primary Signal the End for Open Primary Elections?,* 63 U. Pitt. L.Rev. 217, 221 (2001) ("States as a whole began adopting the direct primary system near the turn of the last century."). While the use of primary elections has recent-

ly expanded to include nonpartisan elections, primary elections were originally created as a way for the major political parties to nominate candidates democratically for public office. *See Hennegan,* 186 Md. at 554, 47 A.2d at 394. It is unlikely, therefore, that either the drafters or the adopters of the Constitution understood the term "the election" to refer to a primary election. *See Roskelly v. Lamone,* 396 Md. 27, 49, 912 A.2d 658, 671 (2006) ("[The Constitution's] words must be taken in their ordinary and common acceptation, because they are presumed to have been so understood by the framers and by the people who adopted it." (internal citations omitted)).

Our conclusion that the term, "the election," refers to general, rather than primary elections, is consistent with other provisions of the Constitution that do not refer explicitly to a general election, but could not plausibly be read otherwise. For example, Article II, § 2 of the original 1876 Constitution provided:

> "*An election* for Governor under this Constitution, shall be held on the Tuesday next after the first Monday of November, in the year eighteen hundred and sixty-seven, and on the same day and month in every fourth year thereafter, at the place of voting for delegates to the General Assembly[.]"

(Emphasis added). This provision provides for the holding of an election for Governor on the first Tuesday after the first Monday of November every four years.[29] The phrase "an election" refers to what we now call a general election. The first reason for this is obvious. Primary elections, as we have seen, while elections in the sense that they are mechanisms by which the electorate decides between competing candidates, are merely nominating procedures for a subsequent general election. *See Hennegan,* 186 Md. at 554, 47 A.2d at 394.

---

**29.** Article II § 2 of the Maryland Constitution currently provides, in relevant part:

"An election for Governor and Lieutenant Governor, under this Constitution, shall be held on the Tuesday next after the first Monday of November, in the year nineteen hundred and seventy-four, and on the same day and month in every fourth year thereafter, at the places of voting for Delegates to the General Assembly[.]"

Second, as pointed out, when the language that established the general election for Governor was first adopted as part of the Constitution of 1867, primary elections for public office were not in use within Maryland or in the greater United States, just as is the case with Article I, § 1.

We conclude from the above that Article I, § 1 refers to two distinct but equal classes of qualifications for the elective franchise. First are the age and residency requirements that must be satisfied by an individual prior to "the close of registration next preceding the election." Second are the time, place and manner requirements applicable to "all elections to be held in the State of the Maryland." When read in context, we think it clearly follows that EL § 3–102, which permits 17 year-olds to vote in primary elections if they will be 18 by the close of the voter registration preceding the general election, fully embodies, and is not in conflict with, the age qualifications of Article I, § 1.

Any contrary reading would impute an anti-democratic meaning upon that provision, and would thus contradict the democratic imperatives underlying Article I, § 1 of the Constitution. The drafters of the 1851 Constitution added Article I, § 1 to the Constitution as part of a broader effort to unify the constitutional elective franchise provisions under a single article of the Constitution. *See* Dan Friedman, *The Maryland Constitution,* 50–51 (2006). They enacted Article I, § 1 as a "democratizing reform" to preserve the secrecy and independence of voters from the State's aristocratic classes who dominated Maryland politics at the time. *Id.* Consistent with this fact, we have stated multiple times that Article 1, § 1 of the Constitution embodies the same principles represented in Article 7 of the Maryland Declaration of Rights. *See Nader for President 2004 v. Maryland State Board of Elections,* 399 Md. 681, 685–86, 926 A.2d 199, 201 (2007); *Maryland Green Party v. Maryland Board of Elections,* 377 Md. 127, 140–43, 832 A.2d 214, 222–23 (2003); *Hennegan v. Geartner,* 186 Md. 551, 554, 47 A.2d 393, 394 (1946). Article 7 of the Maryland Declaration of Rights provides:

"That the right of the People to participate in the Legislature is the best security of liberty and the foundation of all free Government; for this purpose, elections ought to be free and frequent; and every citizen having the qualifications prescribed by the Constitution, ought to have the right of suffrage."

In accordance with this Article, in cases involving voting rights such as the case *sub judice,* we construe the relevant constitutional provisions in relation to their purpose of providing and encouraging the fair and free exercise of the elective franchise. *See Kemp v. Owens,* 76 Md. 235, 241, 24 A. 606, 608 (1892). The rationale for this policy, as made clear by Article 7 of the Declaration of Rights, is that the "[right to vote] is one of, if not, the most important and 'fundamental right[s] granted to Maryland citizens as members of a free society.' " *Nader,* 399 Md. 681, 686, 926 A.2d 199, 201–02 (2007) (quoting *Liddy v. Lamone,* 398 Md. 233, 254, 919 A.2d 1276, 1290 (2007)). In *Maryland Green Party v. State Board of Elections,* we concluded that Article 7 of the Maryland Declaration of Rights "has been held to be even more protective of rights of political participation than the provisions of the Federal Constitution." 377 Md. 127, 150, 832 A.2d 214, 228 (2003). Most clearly, we have stated:

"The elective franchise is the highest right of the citizen, and the spirit of our institutions requires that every opportunity should be afforded for its fair and free exercise. However ambiguously or obscurely statutes or constitutions may be phrased, it would not be just to give them a construction in hostility to the principles on which free governments are founded."

*Kemp,* 76 Md. 235, 241, 24 A. 606, 608 (1892).

The above authorities illuminate the way to the disposition of the present case. It would be inconsistent with the purposes of Maryland law regarding the individual elective franchise were we to hold that an individual must be 18 years-old at the time of the primary election in order to vote in that election. Such a result would deny 17 year-old persons, who

would otherwise be eligible to vote in the subsequent general election, the opportunity to participate fully in the elective process. This result would directly contradict the right to vote and our observation in the Maryland Declaration of Rights that "the spirit of our institutions requires that every opportunity should be afforded for its fair and free exercise." *Id.* at 241, 24 A. at 608.

 For the above reasons, we conclude that 17 year-olds who will turn 18 by close of voter registration before the next general election are constitutionally and statutorily entitled to vote in primary elections, whether partisan or non-partisan, subject to all other provisions of the Constitution and statutory election law.